Donnie AUTRY, Co–Administrator of the Estate of Melissa Kaye Autry; and Virgina White, Co–Administrator of the Estate of Melissa Kaye Autry, Appellants

v.

WESTERN KENTUCKY UNIVERSITY; WKU Student Life Foundation, Inc.; Sandra Hess, in her Individual and Official Capacity; Aubrey Livingston, in her Individual and Official Capacity; Lynne Allison Todd, in her Individual Capacity; Lynne Allison Todd, in her Official Capacity; AJA Hendrix, in his Individual Capacity; AJA Hendrix, in his Official Capacity; Alex Kuehne, in his Individual Capacity; and Alex Kuehne, in his Official Capacity, Appellees.

Wku Student Life Foundation, Inc., Appellant

v.

Donnie Autry, Co–Administrator of the Estate of Melissa Kaye Autry; Virginia White, Co–Administrator of the Estate of Melissa Kaye Autry; Western Kentucky University; Sandra Hess, in her Official Capacity; Aubrey Livingston, in her Official Capacity; Lynne Allison Todd, in her Official Capacity; Alex Kuehne, in his Official Capacity; AJA Hendrix, in her Official Capacity; Sandra Hess, Individually; Aubrey Livingston, Individually; Lynne Allison Todd, Individually; Alex Kuehne, Individually; and AJA Hendrix, Individually, Appellees.

No. 2005–SC–0451–DG, 2005–SC–0480–DG.

Supreme Court of Kentucky.

April 19, 2007.

Benjamin D. Crocker, Crocker Law Offices PLLC, Bowling Green, Counsel for Appellants and Cross–Appellees, Donnie Autry, Co–Administrator of the Estate of Melissa Kaye Autry and Virginia White, Co–Administrator of the Estate of Melissa Kaye Autry.

Gregory N. Stivers, Kerrick, Stivers, Coyle & Van Zant, PLC, Scott Donald Laufenberg, Kerrick, Stivers, Coyle & Van Zant, PLC, Bowling Green, Counsel for Appellees, Western Kentucky University, Sandra Hess, in her Individual and Official Capacity, Aubrey Livingston, in her Individual and Official Capacity, Lynne Allison Todd, in her Official Capacity, AJA Hendrix, in his Official Capacity, and Alex Kuehne, in his Official Capacity.

Charles E. English, Jr., English, Lucas, Priest & Owsley, Bowling Green, Counsel for Appellees and Cross–Appellants, WKU Student Life Foundation, Inc.

Joe B. Campbell, Campbell Law Office, Bowling Green, Counsel for Appellees, Sandra Hess, Individually, Aubrey Livingston, Individually, Lynne Allison Todd, in her Individual Capacity, AJA Hendrix, in his Individual Capacity, and Alex Kuehne, in his Individual Capacity.

Redford H. Coleman, Coleman, Lochmiller & Bond, Elizabethtown, Counsel for Appellee, Alex Kuehne, in his Individual Capacity.

Joseph Kirwan, Coffman & Kirwan, Bowling Green, Counsel for Cross–Appellees, Donnie Autry, Co–Administrator of the Estate of Melissa Kaye Autry and Virginia White, Co–Administrator of the Estate of Melissa Kaye Autry.

Opinion of the Court by Justice
NOBLE.

This wrongful death action is before the Court on discretionary review of the Court of Appeals decision as to whether the defendants were immune from suit. The Court of Appeals held that Western Kentucky University and its employees in their official capacity were immune from suit, but WKU Student Life Foundation, Inc. was not. Finding no error in the Court of Appeals' holding as to the University and its employees in their official capacity, we affirm that part of its opinion. However, because the Student Life Foundation was also entitled to immunity, the part of the Court of Appeals opinion holding otherwise is reversed.

## I. Background

In the early morning hours of May 4, 2003, Western Kentucky University student Melissa Kaye Autry (Katie) was assaulted, raped, and set on fire in her dormitory room in Hugh Poland Hall. She died three days later from her injuries. The dormitory was owned by WKU Student Life Foundation, Inc. (SLF). Western Kentucky University (WKU) was in charge of hiring personnel, making policy, and generally managing the operations of the dorm. Two men were charged with the crimes. One eventually pleaded guilty, and the other was acquitted at trial. There is no dispute that the men were not residents of Hugh Poland Hall.

On behalf of Katie's estate, Donnie Autry and Virginia White, Co–Administrators of the estate, filed a wrongful death suit in Warren Circuit Court against WKU and several of its employees (Sandra Hess, Aubrey Livingston, Lynne Allison Todd, Alex Kuehne and Aja Hendrix) in their official and individual capacities. They also sued Pikes, Inc., Pi Kappa Alpha Fraternity, and SLF. Near the beginning of the case, all defendants filed motions to dismiss based on various claims of immunity. The motions were supplemented with documents and affidavits relating to the relationships between the defendants, and were extensively supported by legal memoranda.

The Warren Circuit Court heard oral argument and subsequently dismissed the claims against WKU, its employees in their official capacities, and SLF. The employees in their individual capacities and the fraternity remained as parties. The Court of Appeals affirmed the Warren Circuit Court's dismissal of Western Kentucky University and its employees in their official capacity, but reversed the dismissal of WKU Student Life Foundation, Inc. The administrators of Katie's estate and SLF both sought and were granted discretionary review by this Court.

## II. Analysis

■ The issue before this Court is whether any of the defendants were enti-

tled to be dismissed from this action because they have immunity from suit in negligence due to being an agency, officer, or employee of the state. Such immunity derives from the doctrine of sovereign immunity, which holds that the state, legislators, prosecutors, judges and others doing the essential work of the state enjoy an absolute immunity from suit.

 Governmental immunity extends to state agencies that perform governmental functions (i.e., act as an arm of the central state government) and are supported by money from the state treasury. *Yanero v. Davis,* 65 S.W.3d 510 (Ky.2001). However, unless created to perform a governmental function, a state agency is not entitled to governmental immunity. *Kentucky Center for the Arts Corp. v. Berns,* 801 S.W.2d 327 (Ky.1990). An analysis of what an agency actually does is required to determine its immunity status.

 If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity. The immunity that an agency enjoys is extended to the official acts of its officers and employees. However, when such officers or employees are sued for negligent acts in their individual capacities, they have qualified official immunity.

 Qualified official immunity applies to public officers or employees if their actions are discretionary (i.e., involving personal deliberation, decisions and judgment) and are made in good faith and within the scope of their authority or employment. This is intended to protect governmental officers or employees from liability for good faith judgment calls in a legally uncertain environment. An act is not "discretionary" merely because some judgment is used in deciding on the means or method used. However, even if an act is discretionary, there is no immunity if it violates constitutional, statutory, or other clearly established rights, or if it is done willfully or maliciously with intent to harm, or if it is committed with a corrupt motive or in bad faith. The burden is on the plaintiff to show that the public official or employee was not acting in good faith. *Yanero,* 65 S.W.3d at 522–23.

 If the negligent acts of public officers or employees are ministerial, there is no immunity. An act is ministerial if the duty is absolute, certain, and imperative, involving mere execution of a specific act based on fixed and designated facts. If ministerial acts are proper, then the public officer or employee has official immunity without qualification. *Id.* at 522. Any act done by a public officer or employee who knows or should have known that his actions, even though official in nature, would violate constitutional rights or who maliciously intends to cause injury, has no immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### A. Western Kentucky University's Immunity

 WKU is a state agency because it serves as a central arm of the state performing the essential function of educating state citizens at the college level and because it receives money from the state treasury in support of this function. *Withers v. University of Kentucky,* 939 S.W.2d 340, 343 (Ky.1997). Further, KRS 44.073(1) says that WKU is a state agency, as a state institution of higher education. Pursuant to KRS 164.300, WKU must also render the supplemental service of establishing and maintaining dormitories. It is therefore entitled to governmental immunity unless the functions at issue can be deemed proprietary.

In order to obtain funding necessary to refurbish its dormitories, which support the function of educating state citizens, WKU created the WKU Student Life Foundation, Inc. to hold title to the dormitory properties. The carefully crafted Articles of Incorporation, as finally amended on July 23, 1999, state at Section IV(1) and (2) that the corporation was created "to at all times operate in connection with, and for the exclusive benefit and support of, Western Kentucky University Foundation, a Corporation; ... [and] to either perform functions of or carry out the purposes of the Western Kentucky University Foundation, a Corporation...." The Articles go on to enumerate several specific purposes of SLF, including maintaining non-profit status and owning "certain student residential and other facilities at Western Kentucky University...." By this ownership, SLF could use Warren County's bonding authority to finance the renovations of the dormitories. WKU subsequently transferred the properties to SLF. In turn, SLF entered into a Management Agreement with WKU on November 20, 2000, whereby WKU would operate the dormitories, collect rent and hire and supervise staff.

■ Autry and White argue that this arrangement makes WKU an agent of SLF, since WKU assumed the management and operating duties of properties owned by SLF, and that this amounts to a proprietary function rather than a governmental one. This argument fails. Regardless of the form of the agency relationship between WKU and SLF, the substance of their relationship is that SLF exists only to serve the University's needs, and the University, by actually managing the dorms, is performing its required statutory duty. Providing the dorms enables the University to "give instruction at the college level, in residence...." KRS 164.300. Only WKU can run an official residence hall for the benefit of the students. Other providers of housing do so as a business, for profit; WKU does so as part of its definitive function. Viewed in this light, WKU clearly is entitled to governmental immunity.

■ Autry and White also complain that the trial court erred in dismissing WKU before discovery was completed, arguing that further facts might be developed that would shed light on the true relationship between WKU and SLF. However, a careful review of the record indicates that the Articles of Incorporation of SLF and the Management Agreement between SLF and WKU were in the record and before the trial court. These documents define the relationship as a matter of law. WKU does not dispute that it was in charge of managing the dorms and making policy. SLF was formed as a non-profit organization with a specific and limited purpose. Further discovery could not provide evidence that would change the inherent nature of WKU as a state agency performing a required statutory duty for a public purpose. The Court of Appeals did not err in affirming the trial court's dismissal of WKU.

### B. WKU Employees

■ State agency officials or employees, when sued in their official capacity, have the same immunity as their employer. Since this Court has determined that WKU, their employer, is entitled to governmental immunity, the employees sued here in their official capacity are likewise entitled to governmental official immunity. The Court of Appeals did not err in affirming the trial court's dismissal of these employees sued in their official capacity.

## C. Student Life Foundation's Immunity

██ Autry and White take the position that regardless of WKU's immunity status, SLF is not a governmental agency and that it is clearly acting as a business entity in owning the dormitories and contracting with WKU to operate and manage them. They argue that to shield SLF gives it an unfair business advantage over non-state agency businesses and thus it is performing a proprietary function.

However, SLF acts as an alter ego of WKU for purposes of holding title to the dormitory properties and obtaining funding to refurbish them. Every other operational function related to the dormitories has been ceded back to WKU through the Management Agreement. Article IV of the agreement defines the duties of WKU and requires WKU to "provide continuous real property services" and to "manage the premises as residence halls for students." More specifically, Section 4.9 provides that WKU is responsible for all personnel matters. Section 4.10 makes WKU responsible for all housing policies, including those related to curfew, alcohol and drugs, and public access. These are rightfully WKU's duties. In reality SLF serves the University, and acts only on its behalf. SLF has no truly independent existence from WKU. To claim that WKU becomes an agent of SLF because of this arrangement is to elevate form over substance. SLF has no respondeat superior relationship with WKU, so as to make SLF vicariously liable for WKU's acts, because delegating dorm management to WKU is tantamount to WKU delegating to itself. The actual alignment is that WKU is a governmental agency fulfilling the public purpose of higher education by providing residence halls to its students which it manages and controls. It uses SLF as an agent to own property for WKU's purposes. This is all that SLF does. Thus while SLF is an incorporated entity, it exists only to serve WKU, and derives its immunity status through WKU.

As an agent or alter ego of WKU, SLF, in its official capacity, is entitled to official immunity because this Court has found that WKU is entitled to governmental immunity.

██ However, SLF was sued directly, on the assumption that it is not a governmental entity at all. This amounts to suing SLF in its individual capacity. In that capacity, SLF is entitled to qualified official immunity, depending upon whether its delegation of management of its dormitory properties to WKU, which included delegation of the security functions at issue, was a discretionary or a ministerial function. *See Yanero*, 65 S.W.3d at 530 (holding that agent of the school board enjoyed qualified official immunity). Under the Articles of Incorporation, at Section IV(3), SLF had the duty "to ... manage ... real and personal property, including but not limited to, certain student and other residential facilities...." If the delegation of those functions was a discretionary act, then SLF, as an agent of WKU, is entitled to immunity, even if SLF was negligent in its delegation. SLF's action in delegating those duties was not controlled by any prescribed rules, nor was it the product of an absolute, certain, and imperative duty. Rather, the delegation was the product of a good faith judgment call that the action would best serve the general functions for which SLF was formed, and was therefore discretionary in nature. As such, SLF was entitled to qualified official immunity. This issue was adequately presented in the record, and the trial court decided it properly by dismissing SLF as a party.

The decision of the Court of Appeals is therefore affirmed in part and reversed in

part, and the trial court's dismissal of SLF is reinstated consistent with this opinion.

All concur.

MINTON, J., not sitting.