RENDERED:  SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000287-MR

SEAN ODE HUDDLESTON, SR.                               APPELLANT

                     APPEAL FROM JEFFERSON CIRCUIT COURT
v.                 HONORABLE AUDRA J. ECKERLE, JUDGE
                         ACTION NO. 18-CI-000546

LOUISVILLE-JEFFERSON COUNTY
PUBLIC DEFENDER CORPORATION                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Sean Ode Huddleston, Sr., appeals from the Jefferson

Circuit Court's summary judgment in favor of Louisville-Jefferson County Public

Defender Corporation (hereinafter "the Corporation").  In its judgment, the trial

court found that the Corporation was entitled to governmental immunity.

Following a careful review of the record, the briefs, and the law, we affirm.

In July 2012, Huddleston was charged with one count each of sodomy in the first degree;[1] wanton endangerment in the first degree;[2] assault in the fourth degree, domestic violence, minor injury;[3] and unlawful imprisonment in the first degree[4] in Jefferson County. He was appointed a public defender, Ashley Michael. Michael, like all public defenders in Jefferson County, was employed by the Corporation. On the day of Huddleston's preliminary hearing, the Commonwealth made a plea offer which would require Huddleston to plead guilty to sexual abuse in the first degree;[5] wanton endangerment in the first degree; and assault in the fourth degree, domestic violence, minor injury. The Commonwealth recommended a sentence of nine years' imprisonment. On the advice of counsel, Huddleston accepted the Commonwealth's plea offer.

Prior to Huddleston's sentencing, Michael ceased working for the Corporation and Huddleston was assigned a new public defender by the Corporation. Huddleston then moved for appointment of new counsel due to a potential conflict of interest relating to Michael's representation of him, which

---

[1] Kentucky Revised Statutes (KRS) 510.070, a Class B felony.

[2] KRS 508.060, a Class D felony.

[3] KRS 508.030, a Class A misdemeanor.

[4] KRS 509.020, a Class D felony.

[5] KRS 510.110, a Class D felony.

precluded the Corporation from continuing to represent him. The trial court granted the motion and the Corporation was stricken as counsel of record for Huddleston. He was then appointed private counsel.

In January 2013, Huddleston's new counsel moved to withdraw his guilty plea. After a hearing on the motion, the trial court denied Huddleston's motion. He was subsequently sentenced to nine years' imprisonment in accordance with the plea agreement.

Huddleston then appealed the denial of his motion to withdraw his guilty plea, and this Court reversed the trial court's order and remanded the matter to permit Huddleston to withdraw his guilty plea. *Huddleston v. Commonwealth*, No. 2013-CA-001538-MR, 2015 WL 3429379, at \*6 (Ky. App. May 29, 2015). This Court was "troubled by the legal representation afforded to Huddleston." *Id.* at \*5. On remand, Huddleston withdrew his guilty plea and entered a plea of not guilty. He was subsequently indicted on two counts of sodomy in the first degree; one count of wanton endangerment in the first degree; one count of assault in the fourth degree, domestic violence, minor injury; and one count of unlawful imprisonment in the first degree.

Ultimately, Huddleston's new counsel negotiated a plea agreement with the Commonwealth. On January 18, 2017, Huddleston entered an *Alford*[6]

---

[6] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

plea to one count of assault in the fourth degree and was sentenced to twelve months' incarceration, which was deemed served by Huddleston's pretrial confinement. Huddleston was confined for more than four years – from his arrest in July 2012, until the date his plea was entered.

On January 24, 2018, Huddleston filed suit against Michael and the Corporation, alleging that Michael was negligent in her representation of him, which resulted in his imprisonment for greater than twelve months, the maximum sentence allowed for the misdemeanor to which he pled. Huddleston further alleged the Corporation was negligent in its hiring and retention of Michael.

The Corporation filed its answer, asserting that it was entitled to qualified official immunity, governmental immunity, or official immunity. The Corporation later moved for summary judgment on the grounds it was entitled to governmental immunity. After Huddleston responded to the Corporation's motion, the Supreme Court of Kentucky decided *Jacobi v. Holbert*, 553 S.W.3d 246 (Ky. 2018), holding that the Department of Public Advocacy (hereinafter "DPA") was entitled to governmental immunity. The trial court then granted leave for supplemental briefing on the *Jacobi* decision and heard oral arguments on the Corporation's motion.

On January 3, 2019, the trial court granted summary judgment on the basis that the Corporation was entitled to governmental immunity. The trial court

found the Corporation satisfied the two-prong analysis articulated by the Supreme Court of Kentucky in *Comair, Inc. v. Lexington-Fayette Urban County Airport Corporation*, 295 S.W.3d 91 (Ky. 2009). Huddleston timely filed motions pursuant to CR[7] 54.05 and CR 52.02 requesting additional findings of fact. The trial court denied the motions as unnecessary. This appeal followed.

On appeal, Huddleston argues the trial court erred in granting summary judgment on the basis that the Corporation was entitled to governmental immunity without sufficient factual and legal information in the record. Furthermore, Huddleston contends the trial court failed to make essential findings of fact with regard to the "parentage" component of the immunity analysis.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03.

> When ruling on a party's motion for summary judgment, the trial court must view all evidence in the light most favorable to the non-moving party and resolve all doubts in his favor. The movant bears the initial burden of showing that no genuine issue of fact exists. Then, the burden shifts to the non-movant to show at least some affirmative evidence showing that there is a genuine issue of material fact for trial. Summary

---

[7] Kentucky Rules of Civil Procedure.

> judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances.

> When reviewing a summary judgment decision, appellate courts need not defer to the trial court's ruling. As legal conclusions are involved and findings of fact are not at issue, appellate review shall be conducted under a *de novo* standard. Appellate courts must only ask whether the trial court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.

*Buda v. Schuler*, 352 S.W.3d 350, 354 (Ky. App. 2011) (internal quotation marks and citations omitted).

Huddleston argues that the Supreme Court's decision in *Jacobi* is inapplicable to the Corporation's immunity status and that the Corporation is only entitled to qualified official immunity rather than governmental immunity. The Corporation contends that it performs a governmental function by legislative mandate with sufficient oversight by the DPA, which entitles it to governmental immunity.

"Governmental immunity is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001) (internal quotation marks, brackets, and citation omitted). In determining the immunity status of "quasi-governmental" or "public" entities, such as the Corporation, the framework for analysis is detailed in *Comair*, 295 S.W.3d at 99. This framework

-6-

requires a court to consider both an entity's source, or "parentage," and the nature of its function. *Id.* These two prongs should not be viewed as a rigid test but should instead be "treated as a guiding principle[.]" *Id.*

We begin our analysis with the question of whether the Corporation performs an integral governmental function because, in light of the Supreme Court's decision in *Jacobi*, Huddleston does not contest this point. The Supreme Court emphasizes this as the "more important aspect" of the determination of an entity's entitlement to governmental immunity. *Id.* An entity is entitled to governmental immunity only where it performs a governmental, rather than proprietary, function. *Yanero*, 65 S.W.3d at 519. "An analysis of what an agency actually does is required to determine its immunity status." *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007).

"[T]he assurance of justice for indigent defendants is an essential governmental task. Not only is it essential but it is constitutionally-mandated." *Jacobi*, 553 S.W.3d at 255.

> Although legal representation *can* be a proprietary function, for DPA attorneys, it is not done for a proprietary purpose. It is intended as the fulfillment of the Commonwealth's responsibility to provide counsel for indigent defendants. DPA attorneys are paid but the agency itself is not in its business for profit. In fact, KRS 31.215(1) specifically prohibits appointed attorneys from accepting fees for the representation of indigent defendants. DPA attorneys are not at an unfair commercial advantage to private attorneys; they are

> representing parties that would be unable to pay attorneys
> in the private sector.

*Id.* at 255-56. In determining that the DPA was entitled to governmental immunity, the Supreme Court further held that "[i]f legal liability for the agency in question would jeopardize the public treasury, then there is a strong justification for the agency being immune from suit[.]" *Id.* at 256. On this basis, the Supreme Court unambiguously determined that the DPA performed an integral government function, entitling it to governmental immunity.

Within Jefferson County, the Corporation serves an identical role to that of the DPA in other parts of the state in that it is responsible for "[t]he representation of indigent persons accused of crimes or mental states which may result in their incarceration or confinement[.]" KRS 31.010(1). Furthermore, the Corporation receives two-thirds of its funding from the state treasury through the DPA and the remainder from the Louisville-Jefferson County Metro Government (hereinafter "Louisville Metro"). The amount of funding provided by the local government is determined by the DPA pursuant to KRS 31.060(2). Following the reasoning of the Supreme Court, if costs are increased for the Corporation to defend against malpractice suits, this would both place a strain on the DPA's limited resources and "would inevitably trickle down to taxpayers and ultimately negatively impact the entire state and the indigent defendants being represented." *Jacobi*, 553 S.W.3d at 256. As its function is essentially identical to that of the

-8-

DPA, the Corporation unquestionably performs an essential governmental function in representing the indigent persons of Jefferson County.

Having established the Corporation's governmental function, we now turn to the determination of its parentage. This inquiry is tied to that of the entity's function because "frequently only an arm of the state can exercise a truly integral governmental function[.]" *Comair*, 295 S.W.3d at 99. An entity "derives its immunity status through" its parent entity. *Id.* (quoting *Autry*, 219 S.W.3d at 719). A determination of an entity's parentage can be as simple as asking whether the entity was created by the state, a county, or a city. *Id.*

The Corporation was established as a non-profit organization in 1971 to represent indigent adults, juveniles accused of delinquency and status offenses, and those individuals who are subjected to involuntary hospitalization due to mental illness within Jefferson County. It exists solely to fulfill the legislative mandates of KRS 31.060.

> (1) Each county, urban-county, charter county, and consolidated local government with a judicial circuit containing ten (10) or more Circuit Judges, excluding judges of family court divisions as designated by the Supreme Court, shall establish and maintain an office of public advocacy and submit a plan for the operation thereof to the Department of Public Advocacy. If the plan submitted is approved by the Department of Public Advocacy, the public advocate shall grant to the county, urban-county, charter county, or consolidated local government the amount to which it would be entitled under KRS 31.050(2) which shall

be used as the Commonwealth's share in defraying the expenses of the program in that county, urban-county, charter county, or consolidated local government.

(2) A county, urban-county, charter county, or consolidated local government identified in subsection (1) of this section shall contribute to the funding of the plan selected and approved in such amounts as the Department of Public Advocacy shall deem reasonable and necessary.

KRS 31.060.

By statute, the Corporation's funding is contingent upon approval by the DPA of its plan for representation of indigent persons in Jefferson County. Under KRS 31.050(2), the Corporation is granted funds upon the public advocate's approval of its plan, and those funds are paid through the Finance and Administration Cabinet. Approximately two-thirds of the Corporation's funding is provided by the state in this manner. The remaining one-third of the Corporation's funding is provided by Louisville Metro. KRS 31.060(2) requires that county governments provide funds, as deemed necessary by the public advocate. Therefore, the DPA has control over both the Corporation's plan for carrying out its statutory duties and funding.

Huddleston argues the trial court erred in failing to make additional findings as to whether the DPA or Louisville Metro was the Corporation's parent. CR 52.02 does not mandate that a trial court make additional findings of fact. The

-10-

rule "permits the trial court to determine the sufficiency of its factual findings." *McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky. App. 2008) (citation omitted). Where a party properly preserves the issue through filing a motion pursuant to CR 52.02, "the question on appeal is whether the omitted finding involves a matter which was essential to the trial court's judgment." *Id.* (citation omitted).

Huddleston requested the following additional findings: (1) whether the Corporation is a state agency, a county agency, or neither; (2) whether the employees of the Corporation are state employees, county employees, or neither; and (3) what entity, if any, is the "parent" of the Corporation. The trial court found that "the DPA exhibits sufficient control over the Corporation pursuant to KRS 31.060" to satisfy the parentage prong of the *Comair* analysis and denied Huddleston's request for additional findings as unnecessary. Although it is Huddleston's position that the trial court failed to determine whether the DPA or the urban county government was the Corporation's parent, a point on which the Corporation itself also appears uncertain, we are convinced the trial court made adequate findings with regard to the parentage prong of the *Comair* analysis and was not obligated to make additional findings simply because Huddleston requested them.

Furthermore, contrary to Huddleston's claim, the Corporation's immunity status is distinguishable from that of the Kentucky High School Athletic

Association (hereinafter "KHSAA") in *Yanero*, 65 S.W.3d 510.  First, Huddleston attempts to characterize the Corporation as an agent of Louisville Metro, just as the KHSAA is an agent of the Kentucky Board of Education, entitling it only to qualified official immunity.  *Id*. at 530.  KRS 156.070(2) authorizes the Kentucky Board of Education to designate an agent to "manage interscholastic athletics in the common schools," but does not mandate such a delegation.  Conversely, KRS 31.060 requires the establishment and maintenance of an office of public advocacy in Jefferson County.  This is not an elective delegation of the urban county government's authority, but a specific legislative mandate.

The funding and organization of the Corporation is distinct from that of the KHSAA.  Despite having been delegated authority by the Kentucky Board of Education pursuant to statute, the KHSAA is not funded by the state treasury and is made up of both public and private or parochial school members.  *Yanero*, 65 S.W.3d at 530.  The Kentucky Supreme Court found "the fact that many of its member schools are private or parochial institutions, not enjoying governmental immunity, precludes its being characterized as a state agency."  *Id*. (citation omitted).  Here, the Corporation is publicly funded – primarily through the DPA with additional funding from Louisville Metro as deemed necessary by the public advocate.  KRS 31.060.  Most importantly, unlike the KHSAA, the Corporation is

-12-

entirely public, with no private component.  Therefore, the Corporation's immunity status is distinguishable from that of the KHSAA.

Due to its control over both the Corporation's function and funding, the DPA is the Corporation's parent entity for purposes of immunity analysis. Furthermore, in representing all indigent defendants in Jefferson County, as mandated by KRS 31.010 and KRS 31.060, the Corporation performs an integral government function.  On this basis, the Corporation is entitled to governmental immunity.

Finally, we will briefly address Huddleston's claim that additional discovery is necessary for determination of the Corporation's immunity status. "Whether a summary judgment was prematurely granted must be determined within the context of the individual case." *Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007).  It is true that summary judgment "is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Id.* at 841 (citation omitted).  "The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

Importantly, "the movant does not have to show that the party opposing a motion for summary judgment actually completed discovery but only

that the opposing party had the opportunity to do so." *Suter*, 226 S.W.3d at 842 (citation omitted). "A party cannot complain of the lack of a complete factual record when it can be shown that the respondent has had an adequate opportunity to undertake discovery." *Leeds v. City of Muldraugh*, 329 S.W.3d 341, 344 (Ky. App. 2010) (internal quotation marks and citation omitted). "If the appellant had proof that a genuine fact issue existed, it was appellant's duty to tender some proof to the court." *Neel v. Wagner-Shuck Realty Co.*, 576 S.W.2d 246, 250 (Ky. App. 1978) (citations omitted).

As in *Hartford Insurance Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979), Huddleston had a period of nearly a year between the filing of the complaint and the date of summary judgment to engage in discovery, or to inform the court, pursuant to CR 56.06, why judgment should not be entered or why a ruling on the motion for summary judgment should be continued. No such affidavit appears in the record. Huddleston alleges he repeatedly requested the trial court grant him leave for limited discovery. The record indicates that at no time from the date he filed his complaint until the trial court granted summary judgment did Huddleston engage in any discovery. Importantly, as noted in the trial court's judgment, Huddleston presented no facts to contradict evidence presented by the Corporation regarding its establishment, structure, and funding. On this basis, we are unconvinced by Huddleston's

argument that summary judgment was premature, and that additional discovery would reveal any issue of material fact.

Because the Corporation is entitled to governmental immunity, we need not address Huddleston's arguments regarding qualified official immunity.

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Vincent Aprile, II
Louisville, Kentucky

BRIEF FOR APPELLEE:

William A. Hoback
Mark S. Fenzel
Louisville, Kentucky