RENDERED: JULY 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0226-MR

TREY MCKNIGHT $\quad$ APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v. $\quad$ HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 21-CI-000339

ADELAIDA OLIVERA, MOTHER
AND NEXT FRIEND OF H.A., A
MINOR CHILD $\quad$ APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND CETRULO, JUDGES.

THOMPSON, CHIEF JUDGE: Trey McKnight (Appellant) appeals from an

opinion and order of the Jefferson Circuit Court denying his motion for summary

judgment. He argues that the circuit court erroneously determined that the issue of

qualified official immunity was a question for the jury. He maintains that he is

entitled to qualified official immunity as a matter of law. After careful review, we

reverse the opinion and order of the Jefferson Circuit Court, and remand it for findings of fact and conclusions of law.

## FACTS AND PROCEDURAL HISTORY

Appellant is a sergeant with the Louisville Metro Police Department (LMPD). On December 26, 2019, he was working off-duty as a security guard at the Mall St. Matthews (the Mall) in Jefferson County, Kentucky. One of Appellant's responsibilities was to enforce the Mall's parental supervision policy, which requires all persons under the age of 18 years old to be accompanied by an adult.

Appellant observed H.A.[1] inside the Mall. H.A. who was 13 years old and not accompanied by an adult. According to Appellant, he approached H.A., who told Appellant that he was waiting for his stepfather to park the car. Appellant would later state that after waiting with H.A. for 5 to 10 minutes, during which time H.A. refused to call his stepfather or allow Appellant to do so, Appellant decided to take H.A. to the Mall office to wait for H.A.'s stepfather.

Appellant then turned on his body camera. A few seconds later, as Appellant was leading H.A. by the arm, H.A. attempted to pull away from Appellant. Appellant would later state in deposition that H.A. brought his arm back as if to strike Appellant. Appellant and two other officers then wrestled H.A.

---

[1] We will use H.A.'s initials because he was a minor child.

to the ground and handcuffed him. During this time, H.A. was struggling and attempting to fight, while calling the officers "bitch ass" and "n---a." He continued to yell slurs at the officers and physically resisted as they took him to the Mall office.

At some point during these events, H.A. was placed under arrest. When they arrived at the office, Appellant directed H.A. to sit in a chair. H.A. again pulled away from Appellant, sending them both against the wall. Appellant then pinned H.A. against the wall to search him. As H.A. continued to struggle, he fell to the floor and was then placed back in the chair to wait for his mother to pick him up.

H.A., through counsel, provided a different version of the events. H.A. claimed that Appellant initially grabbed his arm while they were on the way to the office, that this grabbing was unprovoked and triggered H.A.'s fight or flight response. H.A. acknowledged pulling away from Appellant. H.A. maintains that when they got to the office, Appellant taunted H.A. and slammed him against the wall without provocation. H.A. claimed that the much larger Appellant pressed his body weight against H.A. causing pain and injury; that Appellant placed his hand on H.A.'s neck and lifted him up; that his head hit a metal box; and, that these actions by Appellant were unprovoked and unwarranted.

H.A. was charged with criminal trespass in the third degree, criminal mischief in the second degree, assault in the third degree, and resisting arrest.[2] He pleaded guilty to the charge of resisting arrest in exchange for the remaining charges being dismissed. The factual basis for his guilty plea expressly excluded his conduct after he was handcuffed and taken to the Mall office.

On January 15, 2021, Adelaida Olvera (Appellee), as mother and next friend of H.A., filed a complaint in Jefferson Circuit Court against the Louisville Metro Police Department (LMPD) and Appellant setting out claims of civil battery, assault, outrage, and negligent infliction of emotional distress. The complaint asserted that as a direct and proximate result of the defendants' conduct, H.A. received unwarranted physical and emotional injury. It sought compensatory and punitive damages.

The matter proceeded in Jefferson Circuit Court for more than two years. On May 2, 2023, Appellant filed a motion for summary judgment. Appellant noted that in H.A.'s deposition, H.A. alleged that he was assaulted by an African American Jefferson County Sheriff's deputy. Appellant, being neither African American nor a Sheriff's deputy, argued that he was improperly named in the suit and should be dismissed. The focus of the motion for summary judgment,

---

[2] Kentucky Revised Statutes (KRS) 511.080; KRS 512.030; KRS 508.025; and KRS 520.090.

however, was that Appellant was entitled to qualified immunity for all claims against him.

Thereafter, the Jefferson Circuit Court rendered an opinion and order on July 17, 2023, disposing of Appellant's motion for summary judgment. The court granted Appellant's motion as to the outrage claim, and denied the motion as to Appellee's remaining claims. The court first determined that *Heck v Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d. 383 (1994), and upon which Appellant relied, was not applicable to the instant facts. *Heck* held in relevant part that a §1983 plaintiff could not prevail on a claim of unlawful arrest or imprisonment unless the conviction was reversed, expunged, or declared invalid.

The circuit court then considered the question of whether Appellant was entitled to qualified official immunity in his detention and arrest of H.A. The court cited caselaw for the rule that a peace officer is entitled to use necessary, reasonable force to take a suspect into custody, but may not use more force than is necessary. Pointing to the seminal case of *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), the court noted that the law gives qualified immunity to police officers' discretionary acts performed in their official capacity, thereby shielding them from liability for judgment calls made in good faith in a legally uncertain environment.

In applying the law to the instant facts, the Jefferson Circuit Court stated,

Whether [Appellant] McKnight used necessary or reasonable force against H.A. while in the private Mall offices, or whether he used more force than was necessary and acted in bad faith and with a malicious intention to injure H.A. are genuine issues of material fact. Although the Defendant has presented the Court with the body cam footage of the officers involved and invites the Court to review the video to determine this issue, as set forth above, in considering a motion for summary judgment the Court must examine the evidence **not to decide any issue of fact, but rather to discover if a real issue exists**.

(Emphasis in original.) The circuit court went on to find that, "there is no evidence that McKnight intended to cause H.A. extreme emotional distress." Based on its application of *Heck*, the doctrine of qualified official immunity and its finding of no evidence of extreme emotional distress, the circuit court granted Appellant's motion for summary judgment on the claim of outrage, and denied summary judgment as to all remaining claims.

Appellant then filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to vacate the July 17, 2023 opinion and order granting in part and denying in part his motion for summary judgment. The court denied the motion by way of an opinion and order rendered on January 30, 2024. In denying the motion to vacate, the court reaffirmed its belief that per *Rowan County v. Sloas*, 201 S.W.3d 469 (Ky. 2006), and *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), the question of whether Appellant used more force than was necessary and acted in bad faith were questions of fact to be decided by a jury.

Appellant filed an interlocutory appeal to this Court. Citing a lack of jurisdiction, a panel of this Court dismissed Appellant's appeal on May 20, 2024. Appellant then sought discretionary review of the dismissal, which was granted by the Kentucky Supreme Court on December 13, 2024. The Supreme Court remanded the matter to this Court with instructions to consider the appeal on the merits. Per that order remanding, we will now consider Appellant's interlocutory appeal.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id*. "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a

summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

In *Meinhart v. Louisville Metro Government*, 627 S.W.3d 824 (Ky. 2021), however, the Kentucky Supreme Court recognized that the standard for adjudicating a summary judgment motion based on qualified immunity deviates somewhat from the general standard articulated in *Steelvest*, *supra*. The *Meinhart* Court held that upon a motion for summary judgment based on qualified official immunity, the circuit court must make certain factual determinations relevant to the issue of qualified official immunity, including if the act at issue was discretionary and performed in good faith. *Id.* at 829-30. This is required because qualified immunity is immunity from suit and should therefore be decided before trial to prevent officers from being subjected to unnecessary litigation. *Id.* at 830. The Court in *Meinhart* stated that,

> We recognize trial courts must make certain factual findings when deciding a party's entitlement to qualified official immunity, and a modicum of discovery may be necessary before the court can reasonably make the determination. Those findings should be complete enough to enable adequate appellate review but must necessarily be limited to the very narrow issues required to determine if immunity is applicable, including the actor's status as a government official; the ministerial/discretionary distinction; if the act was

-8-

ministerial, was the actor negligent; and, if the act was discretionary, was it done in good faith and within the scope of the officer's authority. However, the question of immunity is one of law that involves no disputed facts. Thus, examining the pertinent rule, policy, or regulation governing the challenged conduct is all that is necessary to make the characterization. Compliance with the rule, policy, or regulation simply is not relevant in that calculus. Rather, compliance is relevant to negligence and the issue of whether the act was undertaken in good faith. Contrary to Appellants' position, completion of the litigation process is not required to make any of these determinations, especially since the question of immunity is a threshold matter which must be determined in the first instance.

*Id.* at 829-30 (emphasis added).

Further,

The very fact that our law requires a good faith element to discretionary acts prior to granting qualified immunity implies that *someone* will review those actions if they are the subject of a lawsuit. If it is not a jury question, then it is manifestly one for the trial court . . . . In this capacity as a factfinder, the trial court must have the concomitant authority to judge credibility and give weight to the evidence. Unless a factual conclusion is clearly erroneous, neither the Court of Appeals nor this Court has authority to set those conclusions aside.

*Sheehy v. Volentine*, 706 S.W.3d 229, 241-45 (Ky. 2024) (emphasis in original).

Thus, on review of an order disposing of a motion for summary judgment based on qualified official immunity, we will examine the circuit court's findings of fact on "the very narrow issues required to determine if immunity is applicable," *Meinhart*, 627 S.W.3d at 830; and, because immunity is a question of

-9-

law, *id*., consider it *de novo*. *Nash v. Campbell County Fiscal Court*, 345 S.W.3d 811, 816 (Ky. 2011).

## ARGUMENTS AND ANALYSIS

Appellant argues that the Jefferson Circuit Court committed reversible error in denying his motion for summary judgment based on qualified official immunity on the claims of civil battery, assault, and negligent infliction of emotional distress. He asserts that the circuit court erroneously concluded that qualified immunity is a jury question. He also argues that he is entitled to qualified immunity as a matter of law, because 1) there can be no genuine issue of material fact because there is video evidence clearly showing a combative, assaultive, and abusive arrestee who had to be subdued by police officers more than once; 2) he was engaged in discretionary acts within the scope of his official authority; and, 3) Appellee offered no evidence of bad faith. He requests an opinion reversing the opinion and order on appeal, and remanding the matter with instructions to dismiss Appellant from this action based on qualified official immunity.

The issue of whether a defendant is entitled to the defense of sovereign or governmental immunity is a question of law. *Sloas*, 201 S.W.3d at 475 (citing *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 825 (Ky. 2004)). This means "we owe no deference to the legal conclusions of the courts

-10-

below." *Howard v. Big Sandy Area Development District, Inc.*, 626 S.W.3d 466,

470 (Ky. 2020) (footnote and citation omitted).

> '[G]overnmental immunity' is the public policy, derived
> from the traditional doctrine of sovereign immunity, that
> limits imposition of tort liability on a government
> agency. The principle of governmental immunity from
> civil liability is partially grounded in the separation of
> powers doctrine embodied in Sections 27 and 28 of the
> Constitution of Kentucky. The premise is that courts
> should not be called upon to pass judgment on policy
> decisions made by members of coordinate branches of
> government in the context of tort actions, because such
> actions furnish an inadequate crucible for testing the
> merits of social, political or economic policy. Put
> another way, it is not a tort for government to govern.
> Thus, a state agency is entitled to immunity from tort
> liability to the extent that it is performing a
> governmental, as opposed to a proprietary, function.

*Yanero*, 65 S.W.3d at 519 (internal quotation marks, citations, and footnote

omitted).

> If a state agency is deemed to have governmental
> immunity, its officers or employees have official
> immunity when they are sued in their official or
> representative capacity. The immunity that an agency
> enjoys is extended to the official acts of its officers and
> employees. However, when such officers or employees
> are sued for negligent acts in their individual capacities,
> they have qualified official immunity.

*Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007).

> "Official immunity" is immunity from tort liability
> afforded to public officers and employees for acts
> performed in the exercise of their discretionary functions.
> It rests not on the status or title of the officer or

-11-

employee, but on the function performed. Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled . . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. Qualified official immunity is an affirmative defense that must be specifically pled.

*Yanero*, 65 S.W.3d at 521-22 (citations omitted).

Thus, governmental immunity shields governmental agencies when performing a governmental function; official immunity protects employees of governmental agencies when sued in their official capacities for acts performed in the exercise of their discretionary functions; and, qualified official immunity shields employees of governmental agencies when sued in their individual capacities for discretionary acts made in good faith and within the scope of their employment. *Id*. at 519-23.

-12-

To determine if Appellant is entitled to qualified official immunity, we must consider whether 1) his acts of engaging, detaining, and arresting H.A. were discretionary; 2) those acts were made in good faith; and 3) the acts were within the scope of his employment. And, as noted above, because immunity is a question of law, we will examine it *de novo*. *Meinhart*, *supra*; *Nash*, *supra*. We will now consider each element.

## 1 - DISCRETIONARY ACTS

The first question is whether Appellant's detention and arrest of H.A. were discretionary acts.

> [D]iscretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (citation omitted). "There is considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis." *Meinhart*, 627 S.W.3d at 835. Further, allowing a jury with "20/20 hindsight to second-guess the exercise of a police officer's discretionary professional duty . . . is no discretion at all." *Id.*

When Appellant first made contact with H.A., he waited with H.A. for 5 to 10 minutes based on H.A.'s claim that his stepfather was about to enter the Mall. When that did not occur, and after H.A. became uncooperative and refused to call his stepfather or to allow Appellant to do so, Appellant could have properly undertaken one of several actions. He could have reasonably instructed H.A. to leave the Mall because he was not supervised by an adult in violation of Mall policy. Appellant also could have waited longer with H.A. to see if H.A.'s stepfather would arrive. Instead, Appellant directed H.A. to come with Appellant to the office to wait for one of H.A.'s parents to pick him up. This decision falls squarely with the "considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis." *Id.* Because the material facts are resolved as to this element of *Yanero*, and upon reviewing this issue *de novo*, *id.*, we conclude that Appellant's detention and arrest of H.A. were discretionary acts.

2 - <u>GOOD FAITH</u>

The next question is whether Appellant's actions to physically restrain H.A. in the office were made in good faith. "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or

circumstantial evidence that the discretionary act was not performed in good faith."

*Yanero*, 65 S.W.3d at 523 (citation omitted).

> "[B]ad faith" can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Id.* (citations omitted).

Appellant has shown *prima facie* that his detention and arrest of H.A. fell within the scope of his discretionary authority. Therefore, the burden shifted to Appellee to establish by direct or circumstantial evidence that Appellant did not act in good faith. Per *Yanero*, Appellee has the burden of offering proof of Appellant's "objective unreasonableness" resulting in a violation of H.A.'s constitutional, statutory, or clear established right; or, that Appellant willfully or maliciously intended to harm H.A. or acted with a corrupt motive.

In her complaint, Appellee alleges that without provocation, Appellant physically assaulted H.A. by pushing and grabbing him, throwing him against a wall, grabbing him by the neck to lift him up, and hitting his head against a shelf.[3]

---

[3] The complaint alleges that H.A. hit his head on a shelf. Appellee's written argument states that he hit his head on a metal box. It is not clear from the record whether these are the same or different objects.

In response, Appellant implored the circuit court to examine the body camera evidence, which he claims clearly reveals that H.A. was uncooperative, combative, physically and verbally abusive, and wholly responsible for the physical confrontation in the office.[4]

These conflicting claims create a question of fact, which must be resolved to determine if Appellee has overcome the presumption that Appellant's actions were made in good faith. Contrary to the circuit court's view, whether Appellant is entitled to qualified immunity is not a jury question but is a question of law for determination by the court. This is true even if it requires viewing the evidence to determine if Appellant acted in bad faith. Therefore, on remand, the Jefferson Circuit Court should view the body camera evidence, if necessary, to make findings of fact on the narrow issue of whether Appellee has overcome the presumption that Appellant's actions in the office were made in good faith. Such findings are required by *Meinhart*, *supra.*

In an attempt to demonstrate Appellant's bad faith, Appellee also contests Appellant's *motivation* in detaining and arresting H.A. Appellee cites what she characterizes as "contempt of cop," *i.e.*, when an officer arrests a person because he stands up for himself, talks back, or is not deferential to the officer. She also claims that Appellant was irritated with H.A. after the arrest, and that this

---

[4] The body camera video is not in the appellate record.

-16-

irritation is evidence of Appellant's bad faith in the manner in which he restrained H.A. in the office.

Appellee acknowledges that so-called "contempt of cop" is a slang phrase, and she does not direct us to any case law or statutory law for the proposition that contempt of cop, even if present herein, overcomes the presumption that Appellant acted in good faith. This is especially true in light of the body camera footage, which Appellant argues demonstrates how and why Appellant acted. Similarly, Appellee has not cited to nor has our research revealed any basis for concluding that an officer's frustration or irritation with an uncooperative and combative detainee overcomes the presumption that the officer acted in good faith.

Appellant also cites a United States Department of Justice report, and references the 2020 events involving Breonna Taylor in Louisville, Kentucky and the 2014 Ferguson, Missouri riots in an attempt to impeach Appellant's motivation with H.A. in the office. The Justice Department report and other events cited by Appellee have no bearing on whether Appellant acted in good faith in the incident before us. On remand, the Jefferson Circuit Court should not consider the Justice Department report nor the cited riots in determining if Appellee has overcome the presumption that Appellant acted in good faith.

3 - <u>SCOPE OF EMPLOYMENT</u>

The final element of *Yanero* is whether the acts were within the scope of Appellant's employment. The circuit court found that Appellant is an LMPD sergeant. Peace officers who "moonlight" or have second jobs retain their "authority, duties and responsibilities as a peace officer vested with the power to act under the color of law." *Smith v. Norton Hospitals, Inc.*, 488 S.W.3d 23, 32 (Ky. App. 2016). The record satisfies the third element of *Yanero*.

## **CONCLUSION**

The Jefferson Circuit Court erred in concluding that qualified immunity is a jury question; under Kentucky law, immunity is to be decided as a matter of law by the court at the outset. *Meinhart*, 627 S.W.3d at 830. This is because "immunity entitles its possessor to be free from the burdens of defending the action, not merely . . . from liability." *Id.* (internal quotation marks and citation omitted).

The record demonstrates that the first and third elements of the *Yanero* test have been satisfied, *i.e.*, that Appellant's acts were discretionary and within the scope of Appellant's employment as an LMPD officer. On remand, the Jefferson Circuit Court is directed to make findings of fact on the narrow issue of the second element of *Yanero*, that is, whether Appellee met her burden of demonstrating that Appellant acted in bad faith. If required, the court may view

the body camera recordings to make those findings. A finding of bad faith, if any, must be based on

> a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Yanero*, 65 S.W.3d at 523 (citation omitted). If the circuit court determines that Appellant acted in bad faith, it should conclude that he is not entitled to immunity. If the circuit court finds no bad faith as defined by *Yanero*, then Appellant is entitled to qualified official immunity as a matter of law.

For these reasons, we reverse the opinion and order of the Jefferson Circuit Court, and remand the matter for findings of fact and conclusions of law consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kathryn Goodwin
Richard Elder
Louisville, Kentucky

BRIEF FOR APPELLEE:

John K. Spalding
Louisville, Kentucky