RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0359-DG
2019-SC-0158-DG

A.H. AND H.H., THE MINOR                      APPELLANTS
CHILDREN OF JAMES HATCHER
BY AND THROUGH HEIDI GALLO,
MOTHER, GUARDIAN, NEXT FRIEND
AND ADMINISTRATRIX OF THE ESTATE
OF JAMES HATCHER


                    ON REVIEW FROM COURT OF APPEALS
V.                            NO. 2016-CA-1874-MR
                JEFFERSON CIRCUIT COURT NO. 09-CI-001990


LOUISVILLE METRO GOVERNMENT;            APPELLEES
TOM CAMPBELL, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS ACTING
JAILER AND DIRECTOR OF LOUISVILLE
METRO DEPARTMENT OF CORRECTIONS;
CORIZON, LLC, FORMERLY KNOWN AS
CORIZON, INC., FORMERLY KNOWN AS
CORRECTIONAL MEDICAL SERVICES,
INC.; LORIE HATCHER; AND JENNIFER
REESE


**OPINION OF THE COURT BY JUSTICE NICKELL**

**AFFIRMING IN PART AND VACATING IN PART**

Kentucky Revised Statutes (KRS) 71.040 requires jailers to treat inmates humanely. When James Hatcher died within 24 hours of entering custody of the Louisville Metro Department of Corrections (LMDC), his children and their mother, acting as Administratrix of Hatcher's Estate (collectively Gallo), filed

suit alleging violation of KRS 71.040 and attributing Hatcher's death to an unwritten LMDC policy preventing inmates from receiving habit-forming, lawfully-prescribed narcotic or psychotropic drugs. Describing LMDC's response to Hatcher's deteriorating health as part of a continuing pattern of guards ignoring inmate health issues and showing deliberate disregard and indifference for inmate lives and rights, Gallo alleged multiple torts and constitutional violations seeking compensatory and punitive damages from Louisville Metro Government (LMG), LMDC Director Tom Campbell (Campbell) in both his official and individual capacities, and six LMDC guards.[1] Jefferson Circuit Court entered four orders granting summary judgment and dismissing all claims with prejudice. The Kentucky Court of Appeals unanimously affirmed the circuit court.

We granted requests for discretionary review from both sides to consider whether LMG and its employees are immune from an alleged violation of KRS 71.040, and if suit is permitted, whether money damages are available under KRS 446.070. We hold LMG and its employees are cloaked in sovereign immunity and qualified official immunity for an alleged violation of KRS 71.040 and money damages are unavailable because KRS 446.070 does not waive immunity. Additional questions addressed are the effect of a stipulation of

---

[1] All claims against the guards were dismissed by Gallo or resolved by agreement of the parties or mediated settlement.

The original complaint also made claims against CMS, Inc., LMDC's outside medical provider at the time of Hatcher's custody, and two nurses in its employ. Those claims are not addressed in this Opinion.

partial dismissal executed by Gallo; whether new causes of action should be recognized because existing options are inadequate; and, whether Hatcher's children properly alleged loss of parental consortium in addition to the Estate's claims of wrongful death and personal injury. Finally, because we decline to address an alleged violation of the jural rights doctrine due to lack of preservation, we affirm the Court of Appeals in part and vacate in part.

**FACTS**

James Hatcher was booked into LMDC at 11:00 a.m. on February 21, 2008, to serve time for civil contempt after falling behind on child support. Initially assigned to a general population dormitory, Hatcher was moved to a single cell when he exhibited odd behavior. Upon examination, a registered mental health nurse found his vital signs were normal; he had no difficulty breathing; he had no visible injuries; and he complained of no medical issues. The nurse concluded Hatcher was "behaving abnormally" but showed no signs of physical distress and scheduled him to see the psychiatrist the next day. At the nurse's direction, Hatcher was placed in the psychiatric unit without an observer because he displayed no suicidal tendencies and did not appear to have suffered an identifiable medical issue.

Hatcher remained mobile during the night as his odd behavior intensified. Believing he was showing signs of "detoxing," guards checked on him every twenty to thirty minutes but did not perceive him to be in medical distress. About 4:00 a.m., Hatcher was observed pacing and mumbling. Between 5:00 and 5:30 a.m., he was described as being verbal but requested no medical help. Between 7:15 and 7:17 a.m., a guard presumed Hatcher was

3

breathing because he was shaking occasionally, but also noticed his eyes were "bugging out of his head," and he had undressed and pushed his clothes out the cell door's food slot. Guards also considered Hatcher's failure to eat breakfast unusual. At 7:20 a.m., Hatcher was observed lying on the floor, not blinking, and his hands were a "weird" color.

At 7:46 a.m., a guard informed a nurse Hatcher did not look good. When the nurse responded, Hatcher was found on the floor in the fetal position. He was unresponsive, his hands and feet were purple, and his skin was cool to the touch. Detecting no pulse, the nurse began CPR and employed an AED.[2] Resuscitation efforts continued at 8:00 a.m. as Hatcher was transported to University Hospital where he was pronounced dead at 8:45 a.m.

An autopsy showed he died of ischemic cardiac disease and coronary artery atherosclerosis with about a 75 percent occluded enlarged heart. Gallo maintains Hatcher died because he was denied prescribed medication, but Hatcher identified no needed medication during his intake interview. A cold, for which he requested no treatment, was the only active health condition he mentioned. Additional facts will be developed as needed.

## PROCEDURAL BACKGROUND

Gallo filed suit in Jefferson Circuit Court in 2009 alleging guards "were aware of James Hatcher's serious medical needs and ignored a significant threat to his safety and health resulting in his death." Defendants quickly removed the case to federal court citing federal questions. After two years of

---

[2] Automated external defibrillator.

4

discovery, Gallo sought remand to state court, but only after filing an amended federal complaint dismissing one guard, dismissing LMG to some extent, and dismissing all federal statutory and constitutional violations including a 42 U.S.C. § 1983 action, as reflected in this Stipulation of Partial Dismissal:

1.  Plaintiffs dismiss the following individuals and entities:

    a.  William McFarland;[3] and

    b.  Louisville Metro Government; however, this should not be construed as a dismissal of any claims against Defendant Tom Campbell for any liability in his official capacity while acting as the defacto [sic] county jailer if the claim must be asserted against the county entity.

2.  Plaintiffs dismiss all claims for violations of the Constitution of the United States and/or any federal statute.

The federal district court denied a defense request for partial summary judgment and remanded all remaining state claims to Jefferson Circuit Court. *Gallo v. Louisville Metro Government, et al.*, Case No. 3:09CV-223-H at *1 (June 20, 2011).

In late 2011, Gallo filed an amended complaint dismissing all federal statutory and constitutional claims, naming as defendants Campbell, both individually and in his official capacity as LMDC Director, and five guards. LMG was not identified as a party, but it was named in the case style, was referenced in the revised complaint, and Gallo alleged Hatcher's death

---

[3] McFarland was a guard.

> [r]esulted in part from the failure of Tom Campbell, LMG and CMS to employ qualified persons for positions of authority, and/or to properly or conscientiously train and/or supervise the conduct of such persons in their employ, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect [Hatcher].

Count I alleged the guards, Campbell and LMG acted "in violation of KRS 71.040, consequently pursuant to KRS 446.070, they are liable for all damages sustained by the violation and punitive damages."

In its answer, Campbell and the guards asserted official and/or qualified official immunity; actively sought dismissal with prejudice of all claims against themselves and LMG, as well as the entire amended complaint; and renewed their summary judgment motion. The motion maintained the stipulation filed in federal court had dismissed all claims against LMG, but the circuit court found the complaint evinced sufficient intent to retain LMG as a defendant.

The seven-count complaint alleged: violation of KRS 71.040 giving rise to liability for money damages under KRS 446.070; negligence and gross negligence; intentional infliction of mental and emotional distress amounting to outrage; violation of Ky. Const. 1, 2, 14 and 17; nursing malpractice; personal injury, wrongful death and, loss of parental consortium on behalf of Hatcher's two daughters. Gallo sought damages for pain and suffering, expenses, destruction of the power to work and earn money, and punitives. Denying all claims, defendants asserted failure to state a claim for which relief could be granted; statute of limitations; immunity; and, all actions were taken in good faith. Jefferson Circuit Court eventually dismissed with prejudice all claims against LMG-affiliated defendants.

6

Gallo appealed to the Court of Appeals, naming as appellees only LMG and Campbell—both individually and in his official capacity as LMDC Director and "acting jailer."[4]  The panel affirmed the circuit court, holding:  Campbell was not individually liable under KRS 71.040 because creation of LMG, under KRS 67B.030 and Lou. Metro Ord. No. 11-2003 § 30.20(F)(2), consolidated and transferred to LMDC—but not its employees—all corrections-related duties, responsibilities and liabilities of the sheriff and jailer; KRS 67B.030(2) does not violate the jural rights doctrine; LMG and Campbell—in his official capacity— were properly dismissed on grounds of sovereign immunity; and, creation of new causes of action was unnecessary because adequate remedies already exist; and, even if a new *Bivens*[5]-type remedy were recognized, Campbell and LMG would be immune.  Gallo appealed, and we now affirm.

## ANALYSIS

### 1. Standards of Review

> "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Coomer v. CSX Transp. Inc.*, 319 S.W.3d 366, 370 (Ky. 2010).  We review a trial court's summary judgment ruling de novo. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).  We must also view the record in a light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor.  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

---

[4] Despite Gallo agreeing during a Court of Appeals prehearing conference not to pursue claims against Campbell in his official capacity because they repeated claims against LMG, such claims were argued in both the Court of Appeals and in this Court.

[5] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

7

*Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018). Moreover, the party opposing summary judgment, "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Steelvest*, 807 S.W.2d at 481 (internal quotation and citations omitted).

In addition to summary judgment, we address questions of statutory construction and application which we also review de novo. Our goal in construing each statute is to give effect to its plain meaning and unambiguous intent without rendering any part meaningless. *Commonwealth v. Tapp*, 497 S.W.3d 239, 241 (Ky. 2016); *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490-92 (Ky. 1998). We presume the General Assembly intended neither an absurd nor an unconstitutional statute. *King Drugs, Inc. v. Commonwealth*, 250 S.W.3d 643, 645 (Ky. 2008).

## 2. Stipulation

We begin by addressing LMG's claim that a stipulation drafted by Gallo's attorney and filed in federal court prior to remand totally dismissed LMG from the suit. LMG calls the paragraph "patently ambiguous" and claims the circuit court erred in finding Gallo did not abandon LMG as a defendant. While the Court of Appeals did not state a position, we agree with the circuit court.

We acknowledge the stipulation was clumsily worded, but its obvious intent was to retain a claim against Campbell in his official capacity while acknowledging the claim might need to be brought against LMG. As LMG correctly argues, a stipulation is generally construed like a contract. 83 C.J.S.

8

Stipulations § 43. Any ambiguity is held against the drafter and every word is given meaning when possible. Between the stipulation and the complaint, Gallo did not abandon the claim against LMG.

The portion of the stipulation under attack says, "Plaintiffs dismiss . . . Louisville Metro Government," but we cannot read those five words in isolation. We must also read the words immediately thereafter saying the dismissal should not be read as forfeiting the claim against Campbell for violating KRS 71.040 if it "must be asserted against the county entity."

Count I of the amended complaint reads:

> By virtue of their acts and omissions delineate [sic] herein, the conduct of Defendant Guards, Defendant Tom Campbell and Defendant LMG were in violation of KRS 71.040, consequently, pursuant to KRS 446.070, they are liable for all damages sustained by the violation and punitive damages.

Gallo's inclusion of both LMG and Campbell in the amended complaint and specifically in Count I sufficiently retained LMG as a defendant on this claim. *City of Hazard v. Duff*, 175 S.W.2d 146, 149 (Ky. 1943). The circuit court did not err.

### 3. LMG's Liability Under KRS 71.040

We next address whether LMG may be held liable for acts or omissions violative of KRS 71.040 subjecting it to money damages under KRS 446.070. We hold it cannot.

For purposes of KRS 71.040, Gallo erroneously treats LMG as a "county entity" with a jailer. KRS Chapter 67C authorized Louisville and Jefferson County to merge and form LMG, a single unified body known as a

9

"consolidated local government." Merger occurred in January 2003. As a consolidated local government, LMG enjoys the same absolute sovereign immunity afforded counties. KRS 67C.101(2)(d) and (e).[6] Being its own classification, LMG enjoys immunity from tort liability when performing "a governmental, as opposed to a proprietary, function." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). One of LMDC's responsibilities is housing state prisoners[7]—clearly a governmental function. The circuit court found LMG to qualify for immunity and we agree.

Gallo argues the circuit court erroneously dismissed LMG based on KRS 67B.030(2),[8] a statute explaining the handling of corrections issues in a

---

[6] KRS 67C.101(2) states in relevant part:

. . .

(d) A consolidated local government is neither a city government nor a county government as those forms of government exist on July 15, 2002, but it is a separate classification of government which possess the greater powers conferred upon, and is subject to the lesser restrictions applicable to, county government and cities of the first class under the Constitution and general laws of the Commonwealth of Kentucky.

(e) A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees.

[7] KRS 67C.101(3)(h) states:

Establish, erect, maintain, and operate facilities for the confinement, detention, and rehabilitation of persons convicted of the violation of the ordinances and laws of a consolidated local government or the Commonwealth of Kentucky[.]

[8] KRS 67B.030(2) states:

Upon the creation or maintenance of a metropolitan correctional services department by the consolidated local government or fiscal court of a county containing a city of the first class, in which the constitutional offices of sheriff and jailer have been consolidated pursuant to Section 105 of the Constitution of the Commonwealth of Kentucky, all of the duties, responsibilities, and liabilities of the sheriff and jailer as set forth and contained in the Kentucky Revised Statutes, with reference to the operation and maintenance of the county jail and all county correctional

10

consolidated local government. The statute authorized creation of LMDC and vested in "the Department" all corrections-related duties previously performed by the Jefferson County Jailer and Sheriff. Nothing in KRS 67B.030(2) gives LMG immunity, but nothing in it waives the immunity granted by KRS 67C.101(2)(e).

Only the General Assembly may waive LMG's immunity and to be effective, such waiver must be explicit. *Ruplinger v. Louisville/Jefferson Cty. Metro Gov't*, 607 S.W.3d 583, 585 (Ky. 2020) (citation omitted). Absent an express waiver, LMG may invoke immunity. *Id.* Seeking money damages, Gallo paired an alleged violation of KRS 71.040 with KRS 446.070, but neither statute waives immunity. KRS 71.040 directs

> [a]t the time of booking, **the jailer** shall receive and keep in the jail all persons who are lawfully committed thereto, until they are lawfully discharged, unless the person is in need of emergency medical attention, in which case the arresting officer shall obtain medical attention for the person prior to delivery to the jail. **The jailer** shall treat them humanely and furnish them with proper food and lodging during their confinement. He shall deliver those who die in jail to their friends, if requested, or have them decently buried at the expense of the county.

(Emphasis added). As this Court recently explained in *Ruplinger*, 607 S.W.3d at 586, a true waiver of sovereign immunity would provide a remedy for a violation and permit filing of a civil cause of action in a specified court to

---

facilities shall immediately be vested in the department and thereupon the sheriff and jailer shall have no further responsibility, duty, and liability for the performance of said statutory duties on a personal basis; provided, however, that said sheriff shall be required to annually inspect all county correctional facilities and render reports as hereinafter provided.

11

prohibit future violations and allow recovery of damages. Doing none of those things, KRS 71.040 does not explicitly waive sovereign immunity.

KRS 446.070 directs "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This statute "creates a private right of action for the violation of any statute so long as the plaintiff belongs to the class intended to be protected by the statute." *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). Having been an inmate, Hatcher was a member of the class protected by KRS 71.040. Thus, he, or an entity acting on his behalf, could seek relief from LMG for alleged inhumane treatment. However, merely "filing a claim in conjunction with KRS 446.070 does not waive sovereign immunity." *Ruplinger*, 607 S.W.3d at 586 (citing *Clevinger v. Bd. of Educ.*, 789 S.W.2d 5, 9 (Ky. 1990)). Thus, in the present case, Gallo cannot defeat the defense of sovereign immunity by merely joining KRS 71.040 with KRS 446.070.

KRS 71.990 states penalties for violation of KRS Chapter 71. It is succinct. "A violation of KRS 71.020[9] shall constitute a misfeasance in office and the District Court may fine the jailer or he may be indicted therefor." No "penalty or forfeiture" having been enacted for an alleged violation of KRS 71.040, and money damages being unavailable due to immunity, the most that

---

[9] KRS 71.020 states:

Each jailer shall have the custody, rule and charge of the jail in his county and of all persons in the jail and shall keep the same himself or by his deputy or deputies. Where the jail admits the residence of the same therein he or one (1) of his deputies may reside in the jail.

12

would be available to an inmate proving inhumane treatment is equitable relief. In other words, providing humane treatment to inmates in LMDC-run facilities. Neither statute alone, nor the two in tandem, expressly waives immunity. LMG is immune from a claim for money damages and that immunity has not been waived. Summary judgment was properly awarded to LMG.

### 4. Campbell's Official Capacity Liability

Since merger in 2003, Jefferson County has not had a jailer. *See* KRS 67B.030(2); KRS 71.110. At that time, all corrections-related duties, responsibilities and liabilities previously shouldered by the sheriff and jailer were transferred to, and vested in, LMDC. Lou. Metro Ord. No. 11-2003 § 30.20(F)(3). One of LMDC's powers and duties is "[p]rovid[ing] for the humane care, treatment, and feeding of all inmates of all correctional facilities." Lou. Metro Ord. No. 11-2003 § 30.20 (F)(5)(b)(7). LMG, through LMDC, is responsible for humanely treating prisoners in its custody.

By its very terms, KRS 71.040 assigns duties, responsibilities and liabilities to "the jailer." It applies to no one but a "jailer." While equitable relief may be sought from LMG, it cannot be sought from Campbell in his official capacity. By definition, a jailer is a "duly elected" constitutional officer. KRS 67B.020(5); Ky. Const. § 99. KRS Chapter 71 is titled "Jailer," and KRS 71.040 is but one of a myriad of statutes in the chapter applying to "the jailer." The record does not indicate Campbell ever ran for, was elected, or served as Jefferson County Jailer. Gallo calling him "acting jailer" or "de facto jailer" does not make him one.

13

Not being an elected jailer, but rather being appointed as LMDC's Director in 2005, Campbell was merely an LMG employee serving in that position at the Mayor's pleasure until 2008. KRS 67B.040. As such, he was not a proper defendant to answer in his official capacity for an alleged violation of KRS 71.040. Claims brought against one in his official capacity are, "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). As explained, LMG is cloaked in sovereign immunity. The same immunity afforded LMG extends to Campbell in his official capacity. *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 718 (Ky. 2007). Campbell was properly awarded summary judgment in his official capacity.

### 5. Campbell's Individual-Capacity Liability

Just as Campbell could not be held liable in his official capacity, he also could not be held liable for an alleged violation of KRS 71.040 in his individual capacity. Campbell had no contact with Hatcher. He did not personally supervise Hatcher and there is no indication he knew Hatcher was in custody or experienced medical distress. The circuit court ultimately found Campbell was protected by qualified official immunity and granted summary judgment in his favor. "[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522 (Ky. 2001) (citing 63C Am.Jur.2d, *Public Officers and Employees*, § 309 (1997)).

14

Our result is consistent with that reached in two persuasive, although unpublished, federal cases, *Johnson v. Prison Health Servs., Inc.*, 3:06-CV-516-H, 2009 WL 3856188, at *1 (W.D. Ky. Nov. 17, 2009), and *Bruederle v. Louisville Metro Gov't*, 3:05-CV-818-S, 2007 WL 2462630 (W.D. Ky. Aug. 27, 2007). We cite both with full knowledge of Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).

Bruederle claimed while in LMDC custody one weekend he was denied prescribed medication[10] resulting in LMG, Campbell, LMDC guards, and the medical provider committing various torts. Like Hatcher, Bruederle, (represented by the same counsel as Gallo), filed suit alleging—among other things—violation of KRS 71.040, negligence and gross negligence, cruel and unusual punishment violative of the Kentucky Constitution, and intentional infliction of emotional distress. The federal court found Bruederle was a member of the class protected by KRS 71.040, but the named defendants could not be held liable because KRS 67B.030(2) transferred all duties, responsibilities and liabilities previously vested in the jailer and sheriff to LMDC, not to LMG employees such as Campbell and the guards.

Moving to *Johnson*, several inmates claimed they received inadequate care while in LMDC custody. The case was whittled down to Johnson as the lone plaintiff alleging claims against LMG, Campbell as LMDC Director, and Prison Health Systems, Inc. (PHS), LMDC's private health care provider at the

---

[10] Apparently Bruederle's need for prescribed medication was not a secret. Hatcher, however, mentioned no prescriptions and while both mobile and verbal during custody, requested neither medication nor medical attention.

time.  Johnson claimed PHS violated KRS 71.040.  Building on *Bruederle,* the federal court found PHS was not liable under the statute because it was not the "jailer."

Based on our interpretation of KRS 71.040 and 446.070, buttressed by *Bruederle* and *Johnson,* we conclude neither LMG nor Campbell could be held liable for money damages for allegedly providing inhumane treatment to an inmate.  The Court of Appeals did not err in affirming the circuit court's grant of summary judgment to Campbell in his individual capacity.

### 6. Jural Rights Doctrine

Because we have held money damages are unavailable under KRS 446.070 for an alleged violation of KRS 71.040, Gallo asks whether consolidating the elected offices of jailer and sheriff, and vesting in LMDC their former duties, responsibilities and liabilities for operating and maintaining the county jail and all county correctional facilities violates the jural rights doctrine, specifically Ky. Const. §§ 14, 54 and 241.  This question is not properly before us.

KRS 418.075 requires the Attorney General to be notified of any constitutional challenge to a statute.  Gallo's briefs fail to specify how and when the Attorney General was notified of this constitutional challenge.  In reviewing the record, we discerned neither the original complaint, first amended complaint, nor notice of appeal was served on the Attorney General.  Unless the record establishes compliance with KRS 418.075—which this record does not—any judgment deciding the constitutionality of a statute is void. *Maney v. Mary Chiles Hosp.,* 785 S.W.2d 480, 482 (Ky. 1990).  LMG and

16

Campbell raised Gallo's nonadherence to KRS 418.075, but Gallo did not respond.

To ensure strict statutory compliance, the Court of Appeals should have cited the statute and declined to address the argument. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). Instead, it rejected Gallo's argument and found no violation of the jural rights doctrine.

This Court requires strict compliance with KRS 418.075 which states in relevant part,

> (2) In any appeal to the Kentucky Court of Appeals or Supreme Court or the federal appellate courts in any forum which involves the constitutional validity of a statute, the Attorney General **shall**, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect.

(Emphasis added). Compliance with KRS 418.075 is mandatory and appellate courts must demand strict compliance with the statute. Gallo failed to comply. Therefore, appellate review of the claim is prohibited, and we vacate only that portion of the Court of Appeals opinion.

### 7. Requests for New Causes of Action

Gallo asks us to recognize a new cause of action for an alleged violation of Ky. Const. 1, 2, 14 and 17, and another to allow inmates to sue for money damages for alleged violation of KRS 71.040. We decline on both fronts.

Initially, Gallo suggests LMDC guards denied Hatcher adequate medical care—lawfully prescribed medication—resulting in cruel and unusual punishment and ultimately, death. The argument is based on *Estelle v.*

17

*Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), which holds, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C. § 1983]." Gallo acknowledges she must show both "deliberate indifference" by the guards and Hatcher's "serious medical needs" for the claim to succeed. *Id.*, 429 U.S. at 104, 97 S.Ct. at 291. However, the record provided to us identifies no physician-diagnosed medical need—serious or otherwise—nor any prescribed medication.

In *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536 (Ky. 2011), we were urged to equate "the violation of any statute"—the triggering language of KRS 446.070—with a constitutional violation. We rejected the request then, and the intervening decade has not changed our position.

> The current version of the Kentucky Constitution is the fourth constitution in the history of the Commonwealth. Since the adoption of the current constitution in 1892, there have been seventy-eight attempts to amend our constitution, only forty of which have been successful. Unlike a statute, which must pass through both bodies of our bicameral legislature and be signed by the governor to become effective, a constitutional convention requires the majority vote of both legislative chambers in two separate sessions and "one-fourth of the number of qualified voters who voted at the last preceding general election in [Kentucky]." A constitutional amendment requires the citizens of Kentucky to vote for ratification or rejection. In this sense, our constitution cannot be considered a statute. Although reforms or revisions may begin in our legislature, the Constitution "is not enacted by [the] legislature, but ratified by the populace of [the] state."
>
> Aligning with our own precedent, recognizing the common meanings of the words statute and constitution, and accepting the fundamental differences in their creations, we hold that KRS 446.070 does not create a private right of action for violations of the state constitution because our constitution is not a statute.

18

*Id.*

Further, recognition of a new cause of action for violation of the state constitution or KRS 71.040 is unnecessary because "adequate remedial alternatives" already exist. *Id.* at 532. One of Gallo's options was pursuing a 42 U.S.C. § 1983 action in federal court. Interestingly, she initiated such an action but then dismissed the claim before returning to Jefferson Circuit Court where she exclusively pursued state claims including those for violation of KRS 71.040; negligence and gross negligence; intentional infliction of mental and emotional distress amounting to the tort of outrage; medical and nursing malpractice; personal injury, wrongful death and, loss of parental consortium on behalf of Hatcher's two minor daughters. Considering the foregoing existing remedies, we see no need to create a new cause of action and decline the invitation to do so.

In a related question, Gallo urges us to apply *Bivens* to create a new tort allowing money damages for LMG's alleged inhumane and unconstitutional drug policy. Gallo claims a new cause of action is needed because success on existing torts is stymied by immunity. *Bivens* allows a court to create a remedy when the legislature has chosen not to do so. 403 U.S. at 2004-05, 91 S.Ct. at 396-97. However, requests for *Bivens*-type remedies are usually "unjustified." *Wilkie v. Robbins,* 551 U.S. 537, 550, 127 S.Ct. 2588, 2597, 168 L.Ed.2d 389 (2007). In *Bivens*, there were "no special factors counseling hesitation in the absence of affirmative action by Congress." 403 U.S. at 2004-05, 91 S.Ct. at 396-97. Here, Kentucky's General Assembly has chosen to cloak LMG in sovereign immunity. KRS 67C.101(2)(e). It has also chosen not to allow money

19

damages for an alleged violation of KRS 71.040, perhaps recognizing it would open the floodgates to endless prisoner litigation. As noted previously, because adequate remedies and causes of action exist we reject Gallo's invitation to act when the legislature has chosen not to do so.

In addition to the foregoing, we must comment on a troubling lack of proof despite two years of discovery in federal court. The crux of Gallo's complaint is an alleged unwritten LMDC policy, custom, or practice prohibiting giving habit-forming medication to inmates, even when prescribed. Gallo claims application of this policy caused Hatcher's death. However, even if LMDC has such a policy—a contested point—Gallo has not established its enforcement caused Hatcher's death by denying him medically necessary treatment. Gallo has not shown, or even alleged, Hatcher had been prescribed any drug—habit-forming or not—that would have prevented or eased his medical distress if timely administered.

Unrebutted proof establishes Hatcher failed to self-report any medically necessary prescription medication during his intake screening. When a technician commented on his "horrible" appearance, he simply said he had a cold making it hard to hear and causing him to sniffle. Furthermore, the guards supervising Hatcher's incarceration maintain Hatcher voiced no physical discomfort, expressed no need for assistance, and requested no medication though he remained both verbal and mobile during much of his time in LMDC custody. Neither LMG, Campbell, nor the guards can be faulted for failing to provide an unidentified prescription medication—if Hatcher had

one—when Hatcher, himself, did not reveal the true state of his health and medical needs.

Additionally, proof established responsibility for immediate monitoring and providing medical care had been contracted to an outside provider with its own nurses, and was not the direct responsibility of LMG, Campbell, or LMDC guards. After moving Hatcher from a general population dormitory to psychiatric housing, a nurse employed by the medical provider scheduled Hatcher to see the psychiatrist the next day. Throughout the night and the following morning, proof shows guards checked on Hatcher every twenty to thirty minutes and timely reported observed changes in his condition to the nursing staff. Tragically, Hatcher died before seeing the psychiatrist.

Under *Steelvest*, Gallo cannot defeat a well-stated summary judgment motion by relying solely on her own claims and beliefs. She must offer proof in support of her claims. Gallo references individuals with medical credentials claiming familiarity with LMDC's alleged unwritten policy and witnessing its effect on *other* inmates. Existence of a general policy does not mean it specifically impacted Hatcher.

While Gallo attacks LMDC's supposed unwritten "no narcotics policy," she fails to link any such policy to Hatcher's death. Just as Hatcher failed to report any required prescription medication while in custody, Gallo has failed to show Hatcher had been prescribed a drug for treatment of an identifiable medical condition, which, if timely provided, might reasonably have saved his life. Without linking Hatcher's custody to his death, Gallo's argument that

21

Hatcher died because prescribed medication was withheld must fail. Thus, summary judgment was properly granted.

Were we inclined to create new causes of action, this would not be an appropriate case in which to do so considering Gallo's failure to establish any causal connection between LMDC's alleged policy and Hatcher's death. Creation of a new remedy would be advisory at best. In light of *Straub*, 354 S.W.3d at 537, and the existence of adequate alternative remedies, we decline to recognize a new cause of action for a constitutional violation. Nor will we create a *Bivens*-type action allowing a prisoner to seek money damages under KRS 446.070 for a violation of KRS 71.040.

### 8. Loss of Parental Consortium

Claims for loss of parental consortium were filed on behalf of Hatcher's two minor daughters in addition to Gallo's claims for personal injury and wrongful death. As previously noted, LMG enjoys sovereign immunity. KRS 67C.101(2)(e); *Jewish Hosp. Healthcare*, 270 S.W.3d at 907. "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Ky. Const. § 231. The General Assembly has never explicitly waived sovereign immunity to bring a common law claim for loss of parental consortium. *Giuliani v. Guiler*, 951 S.W.2d 318, 319 (Ky. 1997), *as modified on denial of reh'g* (Oct. 2, 1997). Until the legislature provides otherwise, common law claims for loss of parental consortium against the Commonwealth and its political subdivisions, such as LMG, are barred by sovereign immunity.

22

For the reasons expressed, we affirm the Court of Appeals in part and vacate in part.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Andrew John Horne
Horne Law Office

COUNSEL FOR APPELLEES, LOUISVILLE METRO GOVERNMENT AND TOM CAMPBELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ACTING JAILER AND DIRECTOR OF LOUISVILLE METRO DEPARTMENT OF CORRECTIONS:

Ivan Joel Frockt
Michael J. O'Connell
Jefferson County Attorney's Office

COUNSEL FOR APPELLEES, CORIZON, LLC, FORMERLY KNOWN AS CORIZON, INC., FORMERLY KNOWN AS CORRECTIONAL MEDICAL SERVICES, INC.; LORIE HATCHER; AND JENNIFER REESE:

David Sean Ragland
Phillips Parker Orberson & Arnett, PLC