RENDERED: JULY 12, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0223-MR

MICHAEL WILSON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS FIREFIGHTER                                                                    APPELLANT

v.                  APPEAL FROM HART CIRCUIT COURT
                    HONORABLE CHARLES C. SIMMS, III, JUDGE
                    ACTION NO. 20-CI-00083

WESLEY ENGLAND AND
KENTUCKY ASSOCIATION OF
COUNTIES, WORKERS'
COMPENSATION FUND                                                              APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Michael Wilson appeals from the trial court's

interlocutory order denying his motion for summary judgment. Wilson, a

volunteer firefighter who drove an ambulance so paramedics and/or emergency

medical technicians could attend to a critically ill patient en route to a hospital,

contends he is entitled to immunity for injuries stemming from his driving the ambulance. For the reasons stated herein, we reverse and remand for entry of an order dismissing the complaint because Wilson is entitled to qualified official immunity.

**FACTS**

On April 9, 2019, emergency personnel from the Horse Cave Volunteer Fire Department and the Hart County Ambulance Service arrived at a home in Horse Cave to attend to an infant who was not breathing. The Hart County Ambulance Service had a contract with the Horse Cave Volunteer Fire Department to provide "first response, extrication and/or rescue services[.]"

The emergency personnel who arrived at the scene included Horse Cave volunteer firefighter Wilson. Wesley England, a paramedic or emergency medical technician (EMT) with the Hart County Ambulance Service, also responded to the emergency call, accompanied by his partner and a high school student trainee.[1]

England determined the infant needed to be transported to the nearest hospital for evacuation to a hospital in Louisville via helicopter. He needed his

---

[1] The complaint states that England is a paramedic, but the appellee brief states England is an EMT. When asked whether she was in training to become an EMT or something like that at the time of the incident in question, the high school student trainee responded in the affirmative. It is unclear whether England's professional partner was a paramedic, EMT, or an emergency medical responder (EMR).

-2-

partner's assistance with the infant and the trainee was not allowed to drive the ambulance. So, Wilson drove the ambulance – whether he was agreeing to a request, volunteering to drive, or complying with an order, instruction, or suggestion to do so is not entirely clear from the record before us.[2]

Wilson did not tell England that he had almost no prior experience driving an ambulance. Wilson had lived in Horse Cave for a few years at that point and had a general idea where the hospital was. Wilson had received little to no training in driving an ambulance, but he admitted that he had been told in

---

[2] Wilson's and England's depositions were not included in the record on appeal, nor was the deposition of Horse Cave Fire Chief Donnie Parker. Wilson filed a notice of filing of his own and Parker's depositions after the trial court entered its order denying Wilson's summary judgment motion and after Wilson filed his notice of appeal. (Wilson's notice of appeal was the first thing he filed after entry of the trial court's order denying him summary judgment; he had not, for example, filed any motions seeking to alter, amend or reconsider the denial of summary judgment.)

Both parties filed designations of record and Wilson's designation of record specifically requested that all depositions filed of record in the case be included in the record on appeal.

Perhaps the factual summaries in the briefs might suggest that England specifically asked Wilson to drive, and Wilson agreed to do so. Unfortunately, however, we are unable to review the parties' depositions which were not included in the record.

The student trainee testified in her deposition that England did not specifically ask Wilson to drive but that Wilson did drive after England shouted for someone to drive without England knowing who Wilson was.

Nonetheless, despite any minor disputes about details concerning requests or instructions for Wilson or anyone else to drive or any lack of complete information in this regard, there is no dispute that Wilson drove the ambulance and his driving allowed England and his partner to both attend to the infant in route to the hospital. What matters is that Wilson's authority to drive the ambulance derives from the contract between the Hart County Ambulance Service and the Horse Cave Volunteer Fire Department.

training to take the fastest, shortest route when operating an emergency vehicle. There appears to be no dispute that Wilson did not ask for directions to the hospital and that England did not provide any directions to the hospital.

Wilson took a circuitous route around downtown Horse Cave rather than taking a more direct and faster route to the local hospital – which was located a couple of miles from the patient's home. Wilson even got lost at one point. Wilson later admitted that, in hindsight, a different route would have been more direct. (England suggests in his brief that Wilson should have stuck to the main roads instead of taking back roads and that Wilson admitted to learning in training to take the fastest, most direct route – however, taking main roads rather than back roads is not always the same thing as taking the fastest or most direct route.)

In addition to taking a circuitous route, Wilson failed to exercise caution while approaching stop signs according to some witnesses' deposition testimony. For example, off-duty firefighter Perry Martin (Martin), reported being forced to react quickly to avoid a collision with the ambulance when it ran through the stop sign at the intersection of Mary Thomas and Maple Avenues. Martin noted Maple Avenue had the right of way. Martin testified the ambulance had its lights and sirens on, and the ambulance became airborne when traveling down Mary Thomas Avenue to cross Maple Avenue. (The trial court order denying summary judgment says Wilson "disputes that route of travel" identified by Martin

-4-

but admitted "an emergency vehicle should pause at a stop sign to request the right of way.")

While Wilson was driving the ambulance, England and his partner were working on the infant in the back of the ambulance as the trainee observed. England told Wilson to slow down multiple times before the ambulance arrived at the intersection of Mary Thomas and Maple Avenues where the ambulance became airborne. England was thrown into the ceiling of the ambulance and broke his back and suffered a brain injury. The high school trainee was also injured.

Wilson continued the drive to the hospital, some five minutes away. The infant survived.

England filed suit against Wilson and other defendants.[3] The defendants filed a Motion for Summary Judgment.[4] The defendants (including fire departments and their personnel) argued they were entitled to immunity pursuant to KRS[5] 75.070. England opposed the summary judgment motion regarding Wilson, but he did not oppose the motion regarding the other defendants.

---

[3] The Kentucky Association of Counties intervened as a plaintiff as it paid workers' compensation benefits to England and sought subrogation.

[4] The defendants named in the complaint included the City of Horse Cave, the Horse Cave Fire Department, and the Horse Cave Volunteer Fire Department. The complaint also named as defendants Michael Wilson, individually and in his official capacity as a firefighter; Donnie Parker, individually and in his official capacity as the Horse Cave Fire Chief; and Randall Curry, individually and in his official capacity as Mayor of Horse Cave.

[5] Kentucky Revised Statute.

The trial court granted summary judgment in favor of all defendants except Wilson in June 2022. It allowed England time to complete discovery before it ruled on the motion for summary judgment regarding Wilson.

In February of 2023, the trial court entered an order denying summary judgment for Wilson. The trial court noted that England alleged that Wilson "negligently operated the ambulance and was negligent with his route planning and execution." The trial court stated KRS 75.070(1) confers "governmental immunity to fire departments and qualified official immunity to firefighters engaged in discretionary functions." (Quoting *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 807 (Ky. 2009)).[6] So, the trial court concluded Wilson would not be entitled to summary judgment if Wilson's ambulance driving was a ministerial act rather than a discretionary act. *See id*. at 808.

Ultimately, the trial court concluded the act of driving an emergency vehicle was a ministerial act, even if the driver was required to independently assess the situation and make some decisions about how to proceed. The trial court

---

[6] Although all members of our Supreme Court agreed with the result in *Caneyville*, the Court was deeply divided on the reasoning for this result. One justice concurred in result only without a separate opinion. Another justice concurred by separate opinion. There was also a concurring in result opinion written by the then-Chief Justice joined by two other justices, and a separate concurring in result opinion written by another justice. *See* 286 S.W.3d at 812. In short, neither the lead opinion by Justice Scott nor the separate opinions by any other justice garnered the support of a full majority of the Court. The trial court cited Justice Scott's opinion of the Court.

pointed to the lack of any Kentucky appellate decisions about driving ambulances but relied upon two appellate decisions about driving police vehicles. *See Jones v. Lathram*, 150 S.W.3d 50 (Ky. 2004); *City of Brooksville v. Warner*, 533 S.W.3d 688 (Ky. App. 2017).

Noting such Kentucky precedent indicating that operation of a police cruiser was a ministerial act, the trial court stated: "it would be inconsistent to rule otherwise with an ambulance being used for emergency purposes." Further stated by the trial court: "there is clearly evidence that Wilson was not operating the ambulance in accordance with his duties and training" noting it made this determination after considering: "(1) that both paramedics allegedly told Wilson to slow down, and (2) that Martin contends that Wilson failed to stop at a stop sign at the intersection of Mary Thomas Avenue and Maple Streets."

Wilson appeals the denial of his summary judgment motion. We reverse and remand for further proceedings, as the nature of the ambulance driving at issue here was predominantly discretionary given the largely undisputed facts here.[7]

---

[7] Another panel of this Court recently affirmed the denial of summary judgment on qualified official immunity grounds for two emergency responders who allegedly did not comply with local written Standard Operating guidelines requiring use of physical maps and GPS in the ambulance for navigation, but instead used a cell phone application for navigation. This other panel of this Court affirmed the trial court's ruling that the duty to obey known rules regarding navigation was a ministerial and not discretionary act. *Brock v. Hinkel*, No. 2022-CA-1330-MR, 2024 WL 994571, at *5-6 (Ky. App. Mar. 8, 2024) (unpublished) (motion for discretionary review now pending in the Supreme Court). However, the manner of driving the ambulance was

## STANDARD OF REVIEW

The standard of review concerning summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *City of Brooksville*, 533 S.W.3d at 692 (quoting *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001)). Further, "[b]ecause summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Id.* (quoting *Lewis*, 56 S.W.3d at 436).

Determinations concerning the application of statutory grants of immunity are reviewed *de novo*. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

## ANALYSIS

**We May Properly Review Interlocutory Order Denying Summary Judgment on Immunity Grounds, but Must Limit our Review to Questions of Immunity**

Typically, an appellate court may entertain only appeals from final judgments or orders. *See Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883,

---

not at issue. Furthermore, nothing in this record suggests Wilson failed to obey any written policy. Regardless, *Brock v. Hinkel* is not binding authority, and we do not cite the opinion as precedent. Rules of Appellate Procedure (RAP) 41(A).

886 (Ky. 2009) ("CR[8] 54.01 limits appealable judgment[s] to final order[s]
adjudicating all the rights of all the parties in an action or proceeding[.]") (internal
quotation marks omitted). There are, however, certain instances wherein an appeal
may be taken in a matter where there is no final judgment. *Id.*

The propriety of a trial court's denying a motion for summary
judgment on immunity grounds is one of those instances in which an appeal from
an interlocutory order is permitted. *See Baker v. Fields*, 543 S.W.3d 575, 577-78
(Ky. 2018). Because of the unique nature of these appeals, they are limited in
scope to the question of immunity. *Id.* at 578 ("[A]n appellate court reviewing an
interlocutory appeal of a trial court's determination of a defendant's immunity
from suit is limited to the specific issue of whether immunity was properly denied,
nothing more."). In other words, we do not reach any other issues besides
immunity – for example, we need not address whether the evidence did or could
show that Wilson's navigation or driving of the ambulance was negligent.

**According to our Supreme Court, KRS 75.070(1) Extends Governmental
Immunity to Fire Departments, but Only Qualified Official Immunity to Fire
Department Personnel**

As noted by the trial court, KRS 75.070(1) states fire departments are
entitled to governmental immunity as agents of the Commonwealth.

> A municipal fire department, fire protection district fire
> department, and volunteer fire department and the

---

[8] Kentucky Rules of Civil Procedure.

-9-

personnel of each, answering any fire alarms, performing fire prevention services, or other duly authorized emergency services inside and outside of the corporate limits of its municipality, fire protection district, or area normally served by a volunteer fire department, shall be considered an agent of the Commonwealth of Kentucky, and acting solely and alone in a governmental capacity, and such municipality, fire protection district, or area normally served by a volunteer fire department, shall not be liable in damages for any omission or act of commission or negligence while answering an alarm, performing fire prevention services, or other duly authorized emergency services.

Wilson relies on KRS 75.070(1)'s language "and the personnel of each" to argue immunity is conferred not just upon the entity of a fire department, but also upon individual fire department personnel. However, the trial court relied on Justice Scott's opinion of the Court in *Caneyille* which held that fire departments have "governmental immunity" but individual fire department personnel have only "qualified official immunity" for discretionary acts. *See* 286 S.W.3d at 807 (opinion of the Court by Justice Scott).

Instead of Justice Scott's opinion, Wilson urges us to adopt former Chief Justice Minton's analysis in his concurring in result only opinion in *Caneyville*.[9] Chief Justice Minton called for applying KRS 75.070's plain

---

[9] Based on our review of the record, Wilson argued in writing to the trial court both that he was entitled to the same immunity as the fire department under KRS 75.070 without a need to distinguish between ministerial and discretionary acts and that even if ministerial/discretionary act distinctions must be applied, that his actions were discretionary, and he was entitled to qualified official immunity. Having raised these alternative arguments to the trial court, he preserved both arguments for our review. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d

-10-

language to extend immunity to all fire department personnel, rather than just qualified official immunity. And he urged abandonment of difficult-to-apply requirements to analyze whether acts were discretionary or ministerial. *Id*. at 813-84 (Minton, C.J., concurring in result only).

Certainly, a majority of the Kentucky Supreme Court did not fully join in the opinion of the Court written by Justice Scott, as five members of our Supreme Court concurred in result only. *See id*. at 816 (in addition to two other justices concurring with Chief Justice Minton's analysis, Justice Abramson authored a separate concurring in result opinion and Justice Noble concurred in result only without writing a separate opinion).

Nonetheless, recent published precedent from our Supreme Court applies the holding from Justice Scott's *Caneyville* opinion rather than Chief Justice Minton's concurrence in result only. Our Supreme Court recently stated in *Upper Pond Creek Volunteer Fire Department, Inc. v. Kinser*, 617 S.W.3d 328 (Ky. 2020): "We further recognized that KRS 75.070 'confers governmental immunity to fire departments and qualified official immunity to firefighters engaged in discretionary functions.'" *Id*. at 335 (quoting *Caneyville*, 286 S.W.3d at 807 (opinion of the Court by Justice Scott)). And we must follow precedent

---

705, 734 (Ky. 2009) (issue not raised to the trial court was not preserved for review); *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014) ("[T]he critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court.").

from our Supreme Court, regardless of how we might independently resolve this immunity determination if we were writing on a blank slate. As stated in SCR[10] 1.030(8)(a): "The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court."

**Trial Court Erred in Concluding Wilson's Ambulance Driving was a Ministerial Act and that Wilson Was Therefore Not Entitled to Qualified Official Immunity**

To resolve whether Wilson was entitled to qualified official immunity, a court must resolve whether the nature of Wilson's ambulance driving was predominantly discretionary or ministerial. *See Meinhart v. Louisville Metro Government*, 627 S.W.3d 824, 832 (Ky. 2021) (quoting *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010)) (recognizing few acts are solely ministerial or discretionary so courts must consider the "dominant" nature of the act). *See also Sholar v. Turner*, 664 S.W.3d 719, 723 (Ky. App. 2023). Following binding precedent and considering the evidence of record, we conclude that the trial court erred in determining Wilson's ambulance driving to be a ministerial act rather than a predominantly discretionary act. So, we must reverse the trial court's denial of summary judgment in Wilson's favor.

As the trial court noted, our Supreme Court distinguished ministerial

---

[10] Rules of Supreme Court.

acts from discretionary acts in *Autry v. Western Kentucky University*, 219 S.W.3d 713 (Ky. 2007). The Court explained that discretionary acts, for which qualified official immunity exists if the acts were performed in good faith and within the scope of one's authority or employment, involve "personal deliberation, decisions and judgment." *Id*. at 717. On the other hand, the Court defined a ministerial act as "absolute, certain, and imperative, involving mere execution of a specific act based on fixed and designated facts." *Id.* And it noted there is no immunity for negligently performing ministerial acts. *Id*.

Though Kentucky courts have long distinguished between discretionary acts and ministerial acts and frequently applied the distinction in cases involving police vehicular pursuits,[11] there is a paucity of Kentucky published precedent applying these principles to cases of personal injury resulting from ambulance driving. The trial court reviewed caselaw concerning discretionary or ministerial acts, attempting to locate a holding concerning the driving of an ambulance. The trial court did not locate any Kentucky cases on point about ambulance driving. But it noted Kentucky appellate court precedent holding that driving a police car is a ministerial act as "[d]riving is a matter of duty and training[.]" *City of Brooksville*, 533 S.W.3d at 694.

---

[11] *See, e.g.*, *Meinhart*, 627 S.W.3d 824; *Mattingly v. Mitchell*, 425 S.W.3d 85 (Ky. App. 2013); *Jones v. Lathram*, 150 S.W.3d 50; *City of Brooksville*, 533 S.W.3d 688.

Kentucky appellate precedent recognizes that a police officer's decision to begin, continue, or terminate a pursuit is a discretionary act unless the decision to do so is clearly forbidden by controlling specific, imperative, and absolute requirements in their standard operating procedures. *Id.* at 694-95 ("An officer has discretion to decide whether to begin, continue, or end the emergency pursuit, but not for the way he or she operates the police vehicle during the emergency pursuit. Driving is a matter of duty and training, and it is not subject to deliberation or judgment."). *See also Meinhart*, 627 S.W.3d at 834 (standard operating procedures governing Louisville Metro police officers created some ministerial duties containing "explicit restrictions on initiation and termination of pursuits which are simple and definite, leaving nothing to the discretion of the officer" and other duties which were discretionary because although certain factors should be considered, the officer had to exercise professional judgment how "to weigh the law enforcement goals and the specific factors of a situation." The police officer's decision to initiate and continue the pursuit was held to be discretionary since there was nothing indicating the pursuit was absolutely forbidden by specific standard operating procedures); *Mattingly*, 425 S.W.3d at 90 (police officer's decision to initiate and continue pursuit was a ministerial act and police officer had no qualified official immunity because the pursuit at issue

indisputably violated specific, imperative and absolute directives about pursuits in Louisville Metro standard operating procedures).

The trial court also discussed *Jones v. Lathram*, *supra*, in which a citizen was killed in a collision with a Kentucky State Police Trooper responding to an emergency call. 150 S.W.3d 50. The trial court in *Lathram* granted summary judgment in favor of the trooper based on immunity and this Court affirmed. *Id.* at 51-52. The Administratrix of the citizen's estate sought discretionary review, arguing driving is a ministerial function and thus no qualified official immunity attaches. *Id*. at 52-53.

Prior to *Lathram*, our Supreme Court had discussed ministerial and discretionary acts in *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), as follows:

> when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed.
>
> . . .
>
> Conversely, an officer or employee is afforded no immunity from tort liability for the negligent

-15-

performance of a ministerial act, *i.e.*, one that requires
only obedience to the orders of others, or when the
officer's duty is absolute, certain, and imperative,
involving merely execution of a specific act arising from
fixed and designated facts. That a necessity may exist for
the ascertainment of those facts does not operate to
convert the act into one discretionary in nature.

*Id.* at 522 (internal quotation marks and citations omitted).

After reviewing the distinction made between ministerial and discretionary acts in *Yanero*, our Supreme Court in *Jones v. Lathram* determined the trooper's act of driving the car in response to an emergency was ministerial, and thus reversed the grant of summary judgment in the trooper's favor. 150 S.W.3d at 53-54. Our Supreme Court explained:

We recognize that Lathram independently assessed the
situation and responded in a manner that he determined
to be appropriate. However, the act of safely driving a
police cruiser, even in an emergency, is not an act that
typically requires any deliberation or the exercise of
judgment. Rather, driving a police cruiser requires
reactive decisions based on duty, training, and overall
consideration of public safety.

*Id.* at 53.

Similarly, this Court considered the question of whether a police officer's driving in pursuit of a suspect is a ministerial or discretionary act in *City of Brooksville*, 533 S.W.3d at 688. Applying the holding of the Supreme Court in *Jones v. Lathram*, this Court held that the defendant's driving a police car during an emergency pursuit was predominantly ministerial in nature due to controlling

-16-

written policies about driving and driving requiring more instantaneous, reactive decisions rather than true deliberation:

> An officer has discretion to decide whether to begin, continue, or end the emergency pursuit, but not for the way he or she operates the police vehicle during the emergency pursuit. Driving is a matter of duty and training, and it is not subject to deliberation or judgment.

*City of Brooksville*, 533 S.W.3d at 694-95.

The trial court here held Wilson's driving of the ambulance was ministerial, interpreting Kentucky precedent about police officers' driving in emergency pursuits as requiring this holding. Further, the court noted some testimony indicating that Wilson did not operate the ambulance "in accordance with his duties and training" – pointing to testimony about England and his partner telling Wilson to slow down and to Martin's testimony that Wilson failed to stop at a stop sign.

The trial court correctly noted that individual government employees are not entitled to qualified official immunity when performing ministerial acts. But it erred in determining that Wilson's driving the ambulance was ministerial under the facts here.

Ministerial acts require no discretion and require "only obedience to the orders of others, or when the [individual's] duty is absolute, certain, and

imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522.

While perhaps Wilson did not comply with the instructions of England and his partner to slow down, no one has pointed to any evidence that volunteer firefighter Wilson was required to follow any instructions or directives of the ambulance service personnel. Nor has anyone pointed to any official policy or controlling law requiring Wilson, given his limited prior experience driving ambulances, to refuse or decline England's apparent request or instruction to him to drive the ambulance, to allow England and his partner to attend to the patient on the way to the hospital.

While Wilson possibly did not comply with some emergency vehicle training instructions[12] based on any failure to pause at a stop sign, his actions in driving the ambulance under the largely undisputed facts here were predominantly discretionary. After all, no one has pointed to any written policy or controlling law requiring him to use a certain method of navigation when driving the ambulance. And given the lack of any instructions or directions provided to him for driving the

---

[12] England claims Wilson admitted in his deposition to being trained to pause at intersections or stop signs while driving an emergency vehicle. Again, neither Wilson's nor England's depositions are in the record on appeal. In any event, regardless of any admission of training to generally pause at intersections or stop signs while driving an emergency vehicle, no one has pointed to any specific written policy or procedure requiring always stopping or pausing at all intersections or stop signs while driving an ambulance to transport a critically ill patient to a medical facility.

ambulance to the hospital, he had to decide for himself how best to transport the patient as quickly as possible while also attempting to operate the ambulance in a manner avoiding injury to others.

As Wilson points out in his appellate briefs, ambulances transporting patients to medical facilities are exempt from speed limits or other traffic laws subject to certain conditions pursuant to statute – namely, KRS 189.940.[13] But emergency vehicle drivers must also: "operate the vehicle with due regard for the safety of all persons using the street or highway." KRS 189.940(1). Certainly, KRS 189.940 appears to impose some specific requirements such as usage of warning lights or sirens to accompany actions such as not stopping at stop signs or red lights. But KRS 189.940 mainly imposes duties which are predominantly discretionary in manner – requiring the exercise of discretion rather than mandating or forbidding a particular action under certain circumstances.

For example, KRS 189.940 does not require an ambulance transporting a critically ill patient to a medical facility to stop or pause at every red light or stop sign. Instead, KRS 189.940(2) states an ambulance driver approaching a red light or stop sign who has given warning of the emergency such as using warning lights or sirens when transporting a patient to a medical facility:

_____

[13] Other statutory provisions regarding emergency vehicles including ambulances are contained in KRS 189.910 through KRS 189.950.

"shall slow down *as necessary* for safety to traffic, but may proceed past such red or stop light or stop sign with due regard for the safety of persons using the street or highway." (Emphasis added.) In other words, the driver must exercise discretion to determine if it is necessary to slow down at stop signs or red lights for traffic safety purposes.

Furthermore, the emergency ambulance driving at issue here is distinguishable from the act of driving a police vehicle – even police driving in a pursuit which the officer typically has discretion to begin, continue, or terminate. A police pursuit involves following another vehicle. Thus, while the pursuit is ongoing, the police officer does not decide which turns to take or at what speed – instead he/she would simply be tracking another vehicle. However, like the instance at hand, an ambulance taking an ill or injured patient to a hospital must obviously chart its own course, not following another vehicle, and the ambulance driver must make his/her own decisions about route, speed, and any stops or pauses.

Additionally, while a police officer in pursuit is presumed to be doing so in an effort to thwart further crime, the end result of that pursuit may or may not result in the desired effect. Whereas the ultimate outcome for a critical patient in an ambulance can be directly related to the efforts of the ambulance

-20-

driver's decisions regarding speed, route, slowing or stopping for traffic control devices, reaction to other drivers on the road, *etc.*

In sum, a volunteer firefighter driving an ambulance to a hospital in an emergency is distinguishable from a police officer's driving in pursuit and so precedent holding police driving to be a ministerial act is not applicable here. Given the predominantly discretionary nature of Wilson's ambulance driving under the facts of this case, we conclude the trial court erred in determining Wilson's ambulance driving was a ministerial act rather than a predominantly discretionary act.[14]

As Wilson's driving the ambulance was a predominantly discretionary act, Wilson must be afforded qualified official immunity so long as he acted in good faith and in the scope of his authority. *See Sholar*, 664 S.W.3d at 725 ("For the Officers to be entitled to qualified official immunity, they must also meet the remaining two prongs of *Yanero*. Summary judgment is proper only if there is no evidence the Officers' actions were not made in bad faith and were within the scope of their authority."). *See also Caneyville*, 286 S.W.3d at 810 (opinion by Justice Scott referring to *Yanero*'s requirement that the individual defendant was

---

[14] Though we disagree with the trial court's ultimate ruling, we recognize the difficulty of ruling on the novel issues here in the absence of prior controlling Kentucky precedent on immunity for ambulance driving. We appreciate the trial court's efforts to carefully consider the evidence before it and to apply prior precedent to the facts before it.

acting in good faith to be afforded qualified official immunity for discretionary actions, but noting the complainant has the burden to allege and present evidence of bad faith).

England argues in his brief that even if Wilson's actions were discretionary, Wilson is not entitled to qualified official immunity because his actions were in bad faith and/or outside his scope of authority. Naturally, the trial court did not consider whether Wilson's actions were in bad faith or outside the scope of authority since it considered Wilson's actions to be ministerial rather than discretionary and there is no immunity for negligent performance of ministerial acts. *See, e.g.*, *Yanero*, 65 S.W.3d at 522.

England contends that Wilson's actions in driving the ambulance were outside the scope of his authority. Specifically, in his brief, he asserts Wilson's "actions in failing to listen to the EMTs [sic] orders to slow down prior to the incident could be construed as operating beyond his authority as he violated a clear, binding, and mandatory instruction from a supervisor (to slow down) . . . ." But again, no one has pointed to any evidence (such as written policies or contract provisions) that Wilson, as a volunteer firefighter, was required to obey commands or instructions of paramedics, EMTs, or other ambulance service personnel.

Instead, the contract between the ambulance service and the volunteer fire department simply calls for fire department personnel to assist with first

response, extrication, or rescue operations. And it appears undisputed that volunteer Wilson arrived at the ill infant's home as one of the first responders. Therefore, it appears that Wilson established a *prima facie* case that he was acting in the scope of his authority in arriving at the scene and in trying to assist the ambulance service personnel. *See Yanero*, 65 S.W.3d at 523 ("Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith."). *See also Sholar*, 664 S.W.3d at 725 ("It is also clear the Officers were acting within the scope of their authority. They were uniformed officers, on duty, in marked patrol cruisers, responding to a report of a motor vehicle accident.").

We cannot agree that Wilson's actions were outside the scope of his authority for the reasons stated in England's appellee brief. England has not pointed to any evidence which demonstrates that Wilson's navigation and driving of the ambulance was outside the scope of his authority or employment – such as terms of employment forbidding Wilson from driving an ambulance without a particular training program or provisions in the contract between the fire department and the ambulance expressly forbidding firefighters from driving ambulances unless they also had certain certifications such as being an EMT or

-23-

EMR. Nor has anyone argued that the contracted-for first response, extrication, and rescue duties of volunteer firefighters under the contract with the ambulance service expressly exclude such firefighters from driving an ambulance during efforts to provide life-saving intervention to critically ill patients.

England argues in his appellee brief that Wilson acted in bad faith because, in his view, Wilson's numerous violations of training instructions (such as not taking the fastest or most direct route or not pausing at intersections) and his apparent unwillingness to comply with instructions to slow down show "a reckless disregard for the safety of his passengers and authority in general . . . ." England does not cite to the record to show where he raised this argument to the trial court, and in any event, "reckless disregard" is the not the standard for showing bad faith in this context.

Certainly, it was England's burden to allege and prove bad faith. *See Yanero*, 65 S.W.3d at 523. And to do so, he would have to demonstrate that Wilson acted with a willful or malicious intent to harm others, a corrupt motive, or at least constructive knowledge that his actions violated the constitutional statutory or other clearly established rights of other people:

> The Court in *Yanero* states "in the context of qualified
> official immunity, 'bad faith' can be predicated on a
> violation of a constitutional, statutory, or other clearly
> established right which a person in the public employee's
> position presumptively would have known was afforded
> to a person in the plaintiff's position, *i.e.*, objective

> unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." 65 S.W.3d at 523.
>
> It is [plaintiff] Turner's burden to show that the Officers were acting in bad faith. *Sloas*, 201 S.W.3d at 475. This contention must first have been made to the circuit court and further preserved for this appeal.

*Sholar*, 664 S.W.3d at 725.

While Wilson's choice of route and driving may seem far from ideal in hindsight (even to Wilson), England has pointed to no evidence that Wilson knew or should have known he was violating anyone's constitutional, statutory, or other clearly established rights. Nor has he pointed to any evidence that Wilson "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." Despite any flaws in Wilson's driving or route choice, no one has pointed to any evidence of any malicious intent or corrupt motive on the part of this volunteer firefighter trying to help in an extremely time-sensitive, life – threatening emergency by driving an ambulance to allow medical personnel to attend to the critically ill child in route and attempting to arrive at the hospital as quickly as possible. The fact that his route choice and driving quality do not seem ideal in hindsight does not change the discretionary nature of his actions nor a lack of bad faith as defined in this context. *See Meinhart*, 627 S.W.3d at 835 ("[I]t is not in the public's interest to allow a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a police officer's discretionary

professional duty.  Such discretion is no discretion at all.").  *See also Sholar*, 664 S.W.3d at 724 ("The decision about exercise of discretion requires consideration of what the Officers knew at the time, not what hindsight would show.").

Furthermore, though we decline to discuss at length non-binding precedent from our sister state courts which do not address the Kentucky precedent and statutes we consider here, the Georgia Court of Appeals aptly summed up good policy reasons for recognizing ambulance driving in an emergency as a discretionary act and extending immunity to drivers acting in good faith and within the scope of their authority:

> [T]he process of driving the ambulance in responding to the emergency situation was discretionary and not ministerial.  Driving during an emergency response is not a "relatively simple, specific duty."  The mechanical application of certain traffic rules is suspended. Personal judgment is involved in determining how best to proceed. For instance, [the ambulance driver] deposed that in choosing the route, "[y]ou want to avoid crowds and traffic where you can, but you don't want to go so far out of your way that you prolong your arrival time." Because the emergency response was a discretionary task, [the ambulance driver's] alleged negligence during the response does not expose him to personal liability.

*Smith v. Bulloch Cnty. Bd. of Comm'rs*, 261 Ga. App. 667, 669, 583 S.E.2d 475, 477 (2003) (footnote omitted).  Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

**CONCLUSION**

The trial court erred in concluding that Wilson's ambulance driving was a ministerial rather than a predominantly discretionary act. And based on the record before us, Wilson made a *prima facie* case that he acted within the scope of his authority and England did not present evidence that Wilson acted in bad faith as defined in this context by Kentucky precedent. Therefore, Wilson is entitled to qualified official immunity. We thus reverse the trial court's denial of Wilson's motion for summary judgment and remand for entry of summary judgment in his favor and dismissal of the complaint against him.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Matthew P. Cook
Bowling Green, Kentucky

BRIEF FOR APPELLEE WESLEY
ENGLAND:

Timothy L. Stevenson
Bowling Green, Kentucky